MARTIN KIKKERT, JR., PLAINTIFF-APPELLANT, v. ELIZABETH KIKKERT, DEFENDANT-RESPONDENT.

Argued October 19, 1981—Decided December 1, 1981.

*Ladislas F. Feher* argued the cause for appellant.

*Henry F. Ramer* argued the cause for respondent.

PER CURIAM.

The judgment is affirmed substantially for the reasons expressed in the opinion of the Appellate Division reported at 177 *N.J.Super.* 471 (1981).

PASHMAN, J., concurring.

In holding today that "vested" but unmatured private pensions are subject to equitable distribution, the Court reaffirms its commitment to a "comprehensive" application of equitable distribution principles to include "*all* property, regardless of its source, in which a spouse acquires an interest during the marriage." *Kikkert v. Kikkert*, 177 *N.J.Super.* 471, 474 (App.Div. 1981), aff'd o. b., 88 *N.J.* 4 (1981), quoting *Painter v. Painter*, 65 *N.J.* 196, 215, 217 (1974). The Court's unanimous opinion adopts the holding in *Kruger v. Kruger*, 73 *N.J.* 464, 468 (1977), that "[t]he *right* to receive monies in the future is unquestionably . . . an economic resource" acquired during the marriage and therefore "owned" by both parties to the divorce. Having dissented in *Kruger*, 73 *N.J.* at 473, I now write in concurrence to explain my positions in *Kruger* and in this case. Important distinctions exist between the federal military benefits at issue in *Kruger* and the private unmatured pension at issue here. However, I join today's unanimous opinion not only because of differences between *Kruger* and this case, but because after careful thought I have concluded that the *Kruger* majority's comprehensive application of equitable distribution law represents the more reasonable view in light of our statute. *N.J.S.A.* 2A:34–23.

The 1971 amendments embodied in *N.J.S.A.* 2A:34–23 were the first general revision of this State's divorce laws since 1907. *L.* 1971, *c.* 212. *See L.* 1967, *c.* 57, 144–45 (creating a Divorce Law Study Commission); *Painter v. Painter*, 65 *N.J.* 196, 202–03

(1974). The new statute authorized the courts "to effectuate an equitable distribution of property . . . legally and beneficially acquired by [the parties] . . . during the marriage. . . ." *N.J. S.A.* 2A:34–23. This Court consequently was required to decide when property should be considered "acquired" during the marriage and therefore equitably owned by both spouses. We repeatedly have construed the phrase "legally and beneficially acquired" broadly to include a wide range of economic resources in the equitable distribution of the parties' property. *See, e.g., Stern v. Stern*, 66 *N.J.* 340 (1975) (accounts receivable of husband's law firm); *Mey v. Mey*, 79 *N.J.* 121 (1979) (corpus of trust that became available to husband during marriage); *Gauger v. Gauger*, 73 *N.J.* 538 (1977) (joint tenancy with right of survivorship created before the marriage); *Kruger v. Kruger*, 73 *N.J.* 464 (1977) (federal military retirement and disability pay).

Not every type of property that this Court has found to be subject to equitable distribution is still covered by our equitable distribution law. Inherited gifts, which the Court subjected to equitable distribution in *Mey v. Mey, supra,* have been excluded from the law's coverage by an amendment to *N.J.S.A.* 2A:34–23 which exempts property acquired by gift, devise or inheritance. *L.* 1980, *c.* 181, § 1, eff. Dec. 31, 1980. *See Gibbons v. Gibbons*, 86 *N.J.* 515 (1981). Likewise, the United States Supreme Court recently held in *McCarty v. McCarty*, 453 *U.S.* 210, 101 *S.Ct.* 2728, 69 *L.Ed.2d* 589 (1981), that because Congress intended federal military pensions to belong solely to the retired veteran, the Supremacy Clause precludes the states from subjecting such monies to equitable distribution. *Kruger v. Kruger* has therefore been partially overruled, though only with respect to the federal military retirement and disability pay at issue there.

The Supreme Court decision in *McCarty* and the recent legislative exemptions to the equitable distribution law demonstrate that comprehensive application of equitable distribution is not the only reasonable approach to fairly dividing property acquired during a marriage. Certain property, though acquired during the marriage, reasonably can be found to belong to only

one of the spouses. Likewise, some property received during the marriage should be considered to have been "acquired" before or after the marriage for purposes of the statute, just as some property received after the marriage should be considered as acquired during the marriage. The language at issue, "legally and beneficially acquired . . . during the marriage," is far from self-explanatory. This Court must continually interpret that phrase in view of the underlying legislative policies.

To the extent that my dissenting view in *Kruger* recognized the intent of Congress regarding military retirement pay, it correctly states the law of equitable distribution as required by the federal Constitution. My dissent in *Kruger* adopted the minority opinion of Judge Botter in the Appellate Division, who correctly noted the purpose of federal government pensions in inducing faithful career service, and the unique restrictions that Congress has placed on retirement and disability benefits paid through the Veteran's Administration. 139 *N.J.Super.* at 423–24 (Botter, J., dissenting). The Supreme Court focused upon these and other similar aspects of federal military benefits in excluding them from equitable distribution, noting that "military retired pay differs in some significant respects from a typical pension or retirement plan." 453 *U.S.* at 221, 101 *S.Ct.* at 2735, 69 *L.Ed.*2d at 599.

However, it would be disingenuous to describe my *Kruger* dissent as solely a response to the federalism concerns implicated in subjecting military retirement pay to the property distribution laws of each state. The language of the dissenting opinion at times sweeps broadly, holding that military retirement pay should be excluded from equitable distribution not only because of its unique status, but on further grounds that such monies represent "income and not capital assets," and that fairness requires that they "be subject to the continuing power of the court to alter the amount of alimony and child support according to the needs of the parties." 139 *N.J.Super.* at 422. Upon careful reconsideration, I now conclude that these two latter

grounds do not justify a narrow reading of this state's equitable distribution law.

As Justice Schreiber noted in his majority opinion in *Kruger,* the treatment of property under the equitable distribution laws cannot hinge solely upon whether the property is in the form of an asset or a right to receive future income.

A weekly wage represents income, but after its receipt the dollars on hand are an asset. . . . The equitable distribution provision is not concerned with income but with a person's assets in an economic sense on a date certain.

The *right* to receive monies in the future is unquestionably such an economic resource. [73 N.J. at 468.]

If equitable distribution depended upon when the parties actually had received their money, then the distinction between an asset already in the bank and income to be paid in the future would be crucial. But the principles of equitable distribution justify its application not to money *received* during the marriage, but to money which in some way was *acquired* during the marriage. By applying those principles in that fashion, the law

seeks to right what many have felt to be a grave wrong. It gives recognition to the essential supportive role played by the [spouse] in the home, acknowledging that as homemaker, [spouse and parent] [s]he should clearly be entitled to a share of family assets accumulated during the marriage. Thus the division of property upon divorce is responsive to the concept that marriage is a shared enterprise, a joint undertaking, that in many ways it is akin to a partnership. [*Rothman v. Rothman,* 65 *N.J.* 219, 229 (1974)]

Where one spouse has earned money during a marriage while the other spouse worked without pay in the "essential supportive role . . . in the home," *Rothman, supra,* 65 *N.J.* at 229, the case for equitable distribution becomes most compelling, regardless of when the money is received. That is why, when the *right* to receive pension monies is acquired during the marriage, as in this case, that property right should be equitably distributed regardless of when the pension matures and regardless of when the pension will be treated as income for tax purposes. The crucial fact is that Martin Kikkert earned his pension during the "shared enterprise" of his marriage. Fairness thereby entitled both him and his wife to their respective equitable shares.

The purposes of equitable distribution differ from those of alimony and child support. Alimony and child support can help maintain the income of both parties at a certain level over time by using one party's income to support the other. However, the primary purpose of marital property distribution laws is not to compensate for changes in the parties' fortunes *after* they have separated, but to achieve a fair distribution of what the parties "lawfully and beneficially acquired" while they were together. The Legislature wrote the equitable distribution law to apply comprehensively, *see Painter, supra; Rothman, supra; Kruger, supra,* and while the Legislature has made certain exemptions from the act's coverage, *see L.* 1980, *c.* 181, § 1, it has given the courts no reason to narrow equitable distribution beyond those specific exemptions. Thus, in keeping with the legislative intent and the important policy goals underlying equitable distribution, I join the Court in subjecting to equitable distribution the "vested" but unmatured pension benefits which Martin Kikkert acquired during his marriage to Elizabeth Kikkert.

During the ten years since the Legislature in 1971 revised New Jersey's divorce law, our state judiciary has advanced notably in its endeavor to make the best of a situation that often creates only sorrow and hardship for all concerned. This Court has confronted the problems engendered by divorce on several fronts, not only with respect to equitable distribution of the marital property, but also with respect to child custody, see *Beck v. Beck,* 86 *N.J.* 480 (1981). Our Supreme Court Committee on Matrimonial Litigation has strived with success to convert divorce actions from the harrowing confrontations frequently pictured in films and television—and sadly often a reality—to less hostile and more constructive proceedings.

In the whole area of divorce, the views of the different members of this Court as to what is fair and most beneficial to all parties concerned have at times diverged. We search for the perfection of a Solomonic judgment that somehow works complete justice among the parties, but we inevitably fall short. The best we can do in these matters is to interpret the law in

accordance with our understanding of the principles behind it, and to revise those interpretations in light of the law's development.

Personal consistency may be a virtue in judicial decision making, but judges are charged to do justice. The sensitive issues of family law require an open mind to new patterns of social life and changing values. In the four years since my dissent in *Kruger v. Kruger*, I have come to the conclusion that a comprehensive application of our equitable distribution law is in keeping with the Legislature's goal of treating marriage truly as a shared enterprise. I further believe that such a broad application most reasonably embodies the will of the Legislature on this difficult subject. Equitable distribution of the assets at issue is the fairest accommodation of the interests of the parties. And fairness, after all, is the prime concern of equitable distribution. I therefore concur in the judgment of the Court.

PASHMAN, J., concurring in the result.

*For affirmance*—Chief Justice WILENTZ and Justices PASHMAN, CLIFFORD, SCHREIBER, HANDLER, POLLOCK and O'HERN—7.

*For reversal*—None.