184 N.J. Super. 423 (1982)
446 A.2d 537
GLORIA SCHAEFFER, PLAINTIFF-APPELLANT,
v.
MARCUS SCHAEFFER, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued February 17, 1982.
Decided March 9, 1982.
*424 Before Judges MATTHEWS and PRESSLER.
Naomi F. Eber argued the cause for appellant (Tamburri & Tamburri, attorneys; William J. Tamburri, Jr. on the brief).
S.M. Chris Franzblau argued the cause for respondent (Franzblau & Falkin, attorneys; Rosalind Mink on the brief).
*425 PER CURIAM.
This is a post-divorce controversy. Plaintiff Gloria Schaeffer appeals from the denial of her motion for reconsideration of an order modifying the provision of the final judgment of divorce respecting the marital residence.
The parties were married in 1963. Two children were born to them, Roslyn, now 15, and Ronald, now 13. Plaintiff filed a complaint for divorce in 1978, the action was tried and a final judgment was entered in August 1979. In addition to granting the divorce and awarding custody of the children to plaintiff, subject to defendant's right to liberal visitation, the judgment disposed of all of the financial aspects of the marital relationship. With respect to support matters, defendant was ordered to pay plaintiff an unallocated weekly sum of $100 for her support and the support of the children, plaintiff was directed to continue receiving the monthly Social Security benefits due the children and to apply them to their support, and defendant was ordered to pay for the children's health care.
With respect to equitable distribution, the trial judge determined that $71,000 had been brought into the marriage by defendant and was not, therefore, subject to distribution. Accordingly, the judgment provided that, with the exception of separately distributed personal property and the marital residence, all assets, including bank accounts and securities, be valued as of the date of the filing of the complaint and that $43,000 of that value be paid to defendant, the balance of approximately $16,000 to be divided between the parties. The remaining $28,000 to which defendant was entitled as his sole, premarital property was to be received by him out of the proceeds of the eventual sale of the marital residence. The provision of the judgment dealing with the residence was to accord plaintiff and the children the right of exclusive occupancy thereof until the emancipation of the younger child, plaintiff to pay all carrying charges until then. Upon the emancipation of the younger child the house was to be sold with either party *426 accorded the right to purchase the interest of the other. Out of the net proceeds of the sale defendant was to receive $28,000, plaintiff was to receive such sums as she would have paid to reduce the principal of the mortgage and for repairs, and any remaining balance was to be divided between them.
Plaintiff appealed from the judgment, challenging the determination respecting the defendant's right to reimbursement of the sum of $71,000 found to have been acquired by him prior to the marriage. We affirmed the judgment in July 1981 under Docket A-1024079. In April 1980, while the appeal was pending, defendant's motion to modify the weekly support was granted. The motion was based on the substantial increase in the children's monthly Social Security benefits, and accordingly his weekly support obligation was reduced from $100 to $70 a week.
In August 1980, about a year after entry of the final judgment and while plaintiff's appeal therefrom was still pending, plaintiff remarried. The final judgment was silent as to the effect of her remarriage on her right to continue in occupancy of the house with the children, and it is clear that that contingency was not considered when the action was tried and the judgment entered. In September 1980, the month after plaintiff's remarriage, defendant moved for modification of the final judgment to require sale of the residence by reason of the remarriage. The wife's resistance to the motion was based on her contention that she had relied on the explicit terms of the sale provision of the judgment when she remarried; that she was not financially able either to purchase defendant's interest or to provide reasonable alternative living accommodation for the children, and hence that both she and the children would be inordinately prejudiced by the grant of the relief the defendant sought.
Defendant's motion was heard late in September 1980. It was the trial court's view that the relief sought should be granted since, had it considered the remarriage possibility when entering *427 the final judgment, it would have required sale of the house in that event. Accordingly, the judge regarded the omission of that stipulation from the judgment as having been in the nature of a clerical error. An order was accordingly entered in November 1980 requiring the sale but, in order to ameliorate any prejudice to plaintiff, delaying the sale for a one-year period.
By the time the order was entered, plaintiff's remarriage had already failed. She and her second husband had separated at the end of October 1980. Shortly thereafter, she filed a complaint for nullity against him, later amending it to assert a cause of action for divorce. Because of her return to her status quo before the remarriage, she moved in December 1980 for relief from the order requiring the sale of the marital residence, seeking a reconsideration thereof. It is from the denial of that motion that she now appeals.
The issues here raised present yet another variant of the problems involved in the equitable distribution of the marital residence where a determination has been made that the custodial parent should continue in exclusive occupancy thereof with the children for a defined and limited post-divorce period. See, e.g., Gemignani v. Gemignani, 146 N.J. Super. 278 (App.Div. 1977); Stout v. Stout, 155 N.J. Super. 196 (App.Div. 1977); Daly v. Daly, 179 N.J. Super. 344 (App.Div. 1981). Whether that exclusive occupancy is based, as here, on a retention of joint title until the occurrence of a sale-triggering event or whether based on a transfer of title to the occupant-spouse subject to some kind of mortgage arrangement in favor of the other spouse, the common factor in both situations is a deferment of the realization by the nonoccupant spouse of the value of his share of that asset. The fact and consequence of that inevitable deferment cogently illustrates the proposition that the right of the occupant-spouse to exclusive possession of the marital residence subject to a deferred sale or mortgage pay-off is not merely an aspect of equitable distribution but that it also constitutes a contribution by the nonoccupant spouse to the support of the custodial parent *428 and of the children. The hybrid nature of the exclusive possession right, as constituting a combination of equitable distribution, alimony and support is, of course, further compounded by the fact that the significance of those components and the ratio of each to the other is dependent upon the circumstances of each marital relationship and the whole complex of financial and personal factors unique to each family situation. The determination of what is fair and practical and workable in terms of the interests of all the family members is consequently not subject to definitive rule or standard but must, rather, be dictated by the factual predicates inherent in each set of circumstances subject only to general equitable principles.
Thus, in our view, it is not always and inevitably appropriate that a wife's remarriage, if she is the custodial and occupant spouse, should be a sale-triggering event entitling the husband to the immediate or accelerated realization of his share of the value of the marital asset. Clearly, remarriage of the wife will ordinarily terminate the obligation of her former husband to provide her with alimony. But her exclusive right to occupy the marital residence with the children during their minority, while having some implied alimony consequence, is not ordinarily either exclusively or primarily an alimony arrangement but is ordinarily premised in substantial part upon the financial and emotional needs of the children. The extent of the alimony component of the arrangement depends, moreover, on what other obligations have been undertaken by or imposed upon the former husband to provide direct support for his wife and such indirect support as payment of the carrying charges on the residence during the occupancy period. The alimony component may consequently be relatively insubstantial and the child support component paramount in a given situation. Thus, it may well be, dependent upon a balancing of all of the relevant personal and financial factors, including the parties' respective expectations, that the remarriage of the custodial parent should not deprive the children of the benefit of their home and that, *429 moreover, such a result will not defeat or prejudice the non-custodial parent's legitimate rights and expectations.
For the foregoing reasons, we are persuaded that while there might have been justification here for including remarriage as a sale-triggering event in the original disposition of the action, the trial judge nevertheless erred in regarding the omission of that contingency as a clerical error or oversight since the effect of remarriage is not inevitably, necessarily or automatically to mandate immediate sale of the residence. This is particularly so where, as here, the husband's periodic support payment was primarily for child support and the wife was charged with bearing all of the expenses and amortization charges incurred in maintaining the house.
While we do not, however, regard remarriage as necessarily constituting a sale-triggering event, we are, however, satisfied that remarriage does constitute a change in circumstances ordinarily requiring some revision of the exclusive-occupancy arrangement, if not sale of the residence, for the purpose of equitably offsetting the alimony component of the original arrangement which a remarried former wife is no longer entitled to enjoy. That offset can take many different forms, dependent on the actual circumstances involved, including, for example, such devices as requiring the occupant spouse to pay all or part of the carrying charges if she is not already doing so, or requiring her during the period of her occupancy to make periodic payments to the husband subject to an appropriate interest rate on account of his ultimate share of the value of the asset, or by accelerating an existing mortgage in favor of the husband, or by crediting the husband, on the sale of the house, with an amount representing the fair market value of the wife's tenancy as distinct from that of the children. Other techniques or a combination of techniques are undoubtedly also available depending upon the circumstances.
Applying these principles here, we conclude that the motion for relief from the sale order should have been granted. *430 Because the judgment did not provide that plaintiff's remarriage would require the sale of the house and because there was no legal or equitable dictate that it have that consequence, we are of the view not only that the wife was entitled to rely on the express terms of the judgment as entered but, more significantly, that the brief duration of her disastrous second marriage should not, in these circumstances, deprive the two children of their home or of the quantum of support afforded to them by their father represented by his deferment of his enjoyment of his investment in the house. The extent to which, if at all, and if so, the manner in which, the original exclusive occupancy arrangement should be modified in recognition of the plaintiff's loss of her right to alimony from defendant attendant upon her remarriage are matters which, in our view, should be first passed upon by the trial judge based on this record and such further proofs as may be appropriate.
The order appealed from is reversed and the matter remanded to the trial court for further proceedings consistent with this opinion.