198 N.J. Super. 205 (1985)
486 A.2d 928
PETER J. BARBA, PLAINTIFF-APPELLANT,
v.
AUDREY R. BARBA, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued November 5, 1984.
Decided January 17, 1985.
*207 Before Judges MORTON I. GREENBERG and GAYNOR.
Joseph R. Postizzi argued the cause for appellant.
Robert Silver argued the cause for respondent (Michals, Wahl, Silver & Leitner, P.A., attorneys).
The opinion of the court was delivered by GAYNOR, J.A.D.
In this matrimonial case, plaintiff-husband appeals from those portions of the judgment of divorce dealing with equitable distribution of marital assets, alimony and counsel fees. Specifically, plaintiff asserts that the court erred in effecting equitable distribution in such a manner that defendant received a greater percentage of the assets, in improperly computing the amount due on a second mortgage covering the marital residence *208 and the value of plaintiff's profit sharing plan, and erroneously including plaintiff's potential pension as an asset subject to distribution. He also contends the award of alimony was excessive in amount and duration and challenges the allowance of counsel fees to defendant. We agree with certain of plaintiff's contentions and are therefore constrained to reverse and remand for further proceedings consistent with this opinion.
The parties were married on November 21, 1948 and this action was commenced in September 1982 despite their having been separated since the latter part of 1976. Three children were born of the marriage, all of whom are now emancipated. The youngest son and his wife and child occupy a basement apartment in the marital residence and the eldest son resides in the home with defendant. Plaintiff suffers from a heart ailment but is employed full time earning a yearly gross salary of approximately $52,000. Defendant is also employed and earns a gross annual salary of $10,725. The married son pays rent of $200 a month to defendant and the other son pays her $40 a week for room and board. Since the separation, plaintiff has provided for support for defendant, initially in the amount of $500 per month and subsequently increased to $950 a month until April 1982 when he reduced it to $583 monthly.
The marital assets consist of the home, having an agreed market value of $65,000 and subject to two mortgages, a 1971 Dodge automobile valued at $1,500 and another 1978 Dodge valued at $2,300, an IRA account of plaintiff in the amount of $2,000, U.S. Savings Bonds totaling $7,300 and plaintiff's profit sharing plan having a market value of $23,922.25 and which allegedly was only 70-80% vested as of the date of the complaint. The disputed pension benefit was considered by the court to be a marital asset and was valued at $10,072.73. The parties' debts consisted of a $2,299 Visa balance, a Bamberger's account of $249 and a Sears account in the amount of $347, in addition to the two property mortgages. The balance owing on the first mortgage was $6,589.28 and the second mortgage was *209 a home improvement loan in the original principal amount of $9,000 which had been obtained in December 1981 to finance the cost of the basement apartment renovation. Neither party presented proof of the payoff figure on this loan as of the distribution date, but plaintiff stated that as of August 19, 1983 it was $8,523.06[1]. The payment schedule indicated that the remaining payments in September 1982 totaled $14,765.22. The court fixed the balance at $10,000.
Defendant presented expert testimony to establish the value of plaintiff's noncontributory pension and profit sharing plans. Under the terms of the pension plan, ten years of service was required for eligibility with normal retirement commencing at age 65. Early retirement at 55 years of age was available after 20 years of employment. Plaintiff's age was 56 at the time of the trial and he had commenced his employment with his present employer in January 1976. Defendant's expert calculated that by age 65 plaintiff would have worked 197 months and thus be entitled to a pension benefit of $866.94 per month. He considered that the 6.6722 years between plaintiff's start of employment and the filing date of the complaint comprised 40.6703% of the 197 work months required for pension benefits and, applying this percentage to the monthly payment, concluded that $352.53 per month could be attributable to the period of coverture. He then calculated that the present value of the $352.53 monthly benefit over plaintiff's life span would be $10,072.73. The expert conceded that if plaintiff left the company for any reason prior to the completion of ten years of service in January 1986 he would receive no benefit under the plan and also that the amount of any pension could be less if the company suffered economic reverses before plaintiff's retirement at age 65. The court accepted the expert's computation in valuing the pension as a marital asset.
*210 The market value of plaintiff's profit sharing account as of December 31, 1982 was $23,922.25 of which 70% was then vested. It was calculated that $22,838.21 had been acquired during the marriage and that as of the distribution date plaintiff was vested in 70-80% of this amount.
In effectuating an equitable distribution of the marital assets, the court awarded the marital home to defendant, subject to the payment of the two mortgages, and the 1978 Dodge automobile. The IRA account, savings bonds, pension and profit sharing plans were awarded to plaintiff. Defendant was made responsible for the VISA account and plaintiff was required to satisfy the Bamberger's and Sears accounts. In making this distribution, the court considered plaintiff's pension and profit sharing plans as having the ascribed values of $10,072.73 and $22,838.21, with the result that plaintiff received assets having an approximate value of $43,000 with defendant receiving assets having a net value of about $47,700.
An alimony award of $1,000 a month to defendant was based upon her need and plaintiff's ability to pay, with consideration being given to her limited potential for more rewarding employment as well as the income received from her sons. The counsel fee of $2,910 allowed to defendant was also based upon the superior financial condition of plaintiff.
In challenging the determination of the trial court, plaintiff asserts that, utilizing the values accepted by the court, the distribution results in an allocation of net assets valued at $47,710 to defendant and assets of $43,084 to plaintiff. He claims this unequal allocation is unfair and inequitable and constitutes a manifest abuse of the court's discretion. Such a contention is without merit as it erroneously presumes an equal division must be attained in distributing marital assets. This notion was expressly rejected in Rothman v. Rothman, 65 N.J. 219, 232 n. 6 (1974):
The suggestion has been offered that in undertaking to effect an equitable distribution of marital assets, the trial court should, to establish a starting *211 point, presumptively assign some proportion, generally mentioned as 50%, of all eligible assets to each spouse. We disapprove of this proposal. No basis for it is to be found in the statute itself, it would import into our law concepts now held chiefly, if not solely, in those states where community property law principles have gained acceptance, and we foresee that it might readily lead to unjust results. Rejecting any simple formula, we rather believe that each case should be examined as an individual and particular entity.
Accordingly, the manner of distribution and the amount to be awarded to each party are issues addressed to the sound discretion of the trial court. Borodinsky v. Borodinsky, 162 N.J. Super. 437 (App.Div. 1978). In exercising this discretion, the trial judge properly considered the criteria set forth in Painter v. Painter, 65 N.J. 196 (1974), and effected a distribution which took into account the particular circumstances presented in this case. That this division of the assets resulted in defendant's receiving a greater percentage than plaintiff is no basis for the claim of unfairness or abuse of discretion. On the contrary, a distribution weighing heavily in favor of defendant could be equitable as properly reflecting the nature and extent of the marital assets and the great disparity in the parties' earning capabilities and ability to provide for their future financial security.
However, the judge incorrectly interpreted Kikkert v. Kikkert, 177 N.J. Super. 471 (App.Div. 1981), aff'd o.b. 88 N.J. 4 (1981), as permitting plaintiff's pension plan to be included as a marital asset subject to distribution. In Kikkert, the employee had qualified for pension benefits as of the distribution date and only needed to survive to retirement age in order to receive them. As described by Justice Pashman in his concurring opinion in Kikkert v. Kikkert, 88 N.J. at 5, 9, the distributable pension benefits there were "vested" but unmatured, i.e. the right to receive the pension had been acquired with the actual receipt being deferred pending the future retirement. Accordingly, the right to the pension having been obtained, "that property right should be equitably distributed regardless of when the pension matures and regardless of when the pension will be treated as income for income tax purposes." Id. at 8. *212 In the present case, Mr. Barba had not acquired any right of pension monies as he had not been employed for the required ten years. Thus, his interest in the pension did not constitute a property right acquired during the marriage. As observed by this court in Kikkert, 177 N.J. Super. at 475:
... in all of the decisions permitting equitable distribution of pension rights prior to Mueller and Weir, the pensioner had a present right to receive some kind of immediate benefit, either by way of an absolute right to reimbursement of the employee's contributions, as in Pellegrino, or the immediate right to receive retirement benefits, as in Kruger, whether or not the employee had contributed to the cost of the plan. In McGrew we held a noncontributory plan equitably distributable although the husband had not yet retired because he was already beyond the age at which he could opt for retirement and thus had "control over it" in the sense that he could enjoy his pension at that time if he so chose. [citation omitted].
In White v. White, 136 N.J. Super. 552 (App.Div. 1975), this court concluded that an interest in a noncontributory pension plan was not a distributable marital asset when the employee had not met the eligibility requirements which were conditions precedent to the acquisition of any right to receive retirement income in the future.
In some jurisdictions, courts have taken the view that even pension rights which are wholly contingent should be included for distribution. In re Marriage of Brown, 15 Cal.3d 838, 846-849, 544 P.2d 561, 566-568, 126 Cal. Rptr. 633, 638-639 (Sup.Ct. 1976); Van Loan v. Van Loan, 116 Ariz. 272, 274, 569 P.2d 214, 216 (Sup.Ct. 1977); DeRevere v. DeRevere, 5 Wash. App. 741, 743-744, 491 P.2d 249, 251-252 (App.Ct. 1971). However, we decline to consider such interests as acquired property rights eligible for equitable distribution under N.J.S.A. 2A:34-23 in the light of our established case law and, of equal importance, because of the potential problems arising from including as a distributable asset an interest which is so contingent as not to be subject to an acceptable statistical valuation, or from enforcing a long term sharing of financial interests despite the changed relationships and circumstances of the parties.
*213 Accordingly, the value of plaintiff's interest in the pension plan provided by his employer should not have been used by the trial judge in developing a plan for equitable distribution of the marital assets. Nevertheless, it may be entitled to some consideration in the assessment of plaintiff's overall financial position.
Also, in view of the proofs that plaintiff's profit sharing account was only 70% vested as of December 31, 1982, the value of that account for purposes of distribution should have been reduced accordingly. As the full value of the account as of the date of distribution did not represent its true value, the use of such valuation in devising a plan of distribution was improper.
A further error inherent in the award of assets was the use of an approximate figure for the balance due on the second mortgage covering the marital residence. While this circumstance was caused by the parties' failure to provide the court with accurate and reliable information, as is their responsibility, see Rothman v. Rothman, 65 N.J. at 233, an approximation which was in excess of the original principal amount should not have been used. In such a situation, the court should direct the parties to obtain and submit the required information.[2]
We have considered plaintiff's contentions as to the amount and duration of the alimony awarded to defendant and the counsel fee allowance and find that the awards are amply supported by the evidence concerning defendant's needs, her limited employment skills and the probability that her earnings will not substantially improve in the future; as well as the proofs relating to plaintiff's financial capabilities. See Bonanno v. Bonanno, 4 N.J. 268, 274-275 (1950). Further, this is not the type of case in which "rehabilitative" alimony is an appropriate method of resolving support needs. See Hill v. Hill, 91 *214 N.J. 506, 509 (1982). However, since the matter of alimony is interrelated with that of equitable distribution, the support payments to defendant may also be reviewed by the trial court. See Smith v. Smith, 72 N.J. 350, 359 (1977).
Accordingly, those provisions of the judgment pertaining to equitable distribution are reversed and the matter is remanded to the trial court for reconsideration of the distribution of marital assets to reflect the exclusion of plaintiff's interest in his pension plan, a discounted value of plaintiff's profit sharing account and a recalculation of the equity in the marital residence based upon an accurate amount for the second mortgage balance. We affirm the award of alimony and counsel fees, except that the trial court may reconsider these to the extent it deems necessary because of their interrelation with the division of assets. We do not retain jurisdiction.
NOTES
[1] During the pendency of the appeal plaintiff supplied a letter from the holder of the second mortgage setting forth a September 1982 payoff figure as $8,931.72.
[2] The correct payoff figure was available as evidenced by the statement submitted by plaintiff during this appeal.