214 N.J. Super. 545 (1986)
520 A.2d 777
RENETTA H. DAESCHLER, PLAINTIFF-RESPONDENT,
v.
ALBERT DAESCHLER, DEFENDANT-RESPONDENT,
v.
JOHN BRUNO CORPORATION, INTERVENOR-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued October 7, 1986.
Decided December 31, 1986.
*547 Before Judges PRESSLER, GAULKIN and BAIME.
Richard B. Honig argued the cause for appellant (Klinger, Nicolette, Mavroudis & Honig, attorneys; Richard Honig, of counsel; John A. Rizzo, on the brief).
Ralph A. Ferro argued the cause for plaintiff-respondent (Ferro and Ferro, attorneys).
Michael L. Ostrowsky argued the cause for defendant-respondent (Dollinger & Ostrowsky, attorneys).
The opinion of the court was delivered by PRESSLER, P.J.A.D.
This appeal raises basic questions respecting the effect of divorce on the preexisting right of a judgment creditor of one of the spouses to seek satisfaction of his judgment lien out of the debtor spouse's interest in a tenancy by the entirety. In Interchange State Bank v. Riegel, 190 N.J. Super. 139 (App. Div. 1983), this court held that a judgment creditor who levies on the debtor spouse's interest in a tenancy by the entirety prior to entry of a divorce judgment automatically becomes, by virtue of the judgment, an equal tenant in common with the non-debtor spouse entitled to partition or execution sale to satisfy the lien. We disagree with that holding, which, in our *548 view, fails to take into account the fundamental effect of the equitable distribution law on the nature of the spouses' respective post-divorce rights in property held by them during coverture by the entireties. We, therefore, decline to follow Interchange State Bank, and hold that the creditor's post-divorce rights are defined and limited by the equitable distribution scheme incorporated into the judgment of divorce.
The issue is presented to us in the following manner. Plaintiff Renetta H. Daeschler filed a complaint for divorce against defendant Albert Daeschler in September 1982 seeking to terminate their 25-year marriage. She also sought equitable distribution of the marital assets, alimony, and support for the youngest child of the marriage, the two older children having been then emancipated. In December 1983, while the divorce action was pending, intervenor John Bruno Corporation[1] recovered a judgment against defendant alone in the amount of about $90,000 in an action on a debt incurred by him in the course of a disastrous business venture. Shortly after entry of the judgment, the intervenor obtained a writ of execution addressed to the Bergen County Sheriff. The sheriff's return, dated January 16, 1984, showed a levy against "all the right, title and interest" of defendant in the marital residence, owned by defendant and his wife as tenants by the entirety and in which they were then residing with two of their children. No levy was first made on defendant's personalty since, as the sheriff's return explained, "I was refused access to the premises."
The intervenor took no further action in respect of either its judgment or its levy during the pendency of the divorce action. That action was concluded by a final judgment entered on June 1, 1984, which terminated the marriage and adjudicated, following *549 a hearing, the financial rights of the parties. The full extent of that adjudication was to award the parties the automobile each was then using, to allow plaintiff a counsel fee of $1,500, and to provide, with respect to the marital residence, that it was to be owned "eighty percent (80%) by Renetta H. Daeschler, plaintiff, and twenty percent (20%) by Albert F. Daeschler, defendant." The judgment did not award either party any exclusive possessory rights to the house, nor did it direct its immediate sale. We gather from post-judgment certifications filed by the parties and the post-judgment deposition of defendant taken by the creditor pursuant to a discovery order that after the judgment of divorce was entered, both parties continued to reside in the house with the two children, that they contributed to the mortgage payments in their 80-20 adjudicated ownership ratio but contributed to all other maintenance expenses equally, that the plaintiff continued her employment by Bambergers in an office position while defendant continued his employment by Public Service Electric and Gas Company, that both then adult younger children were working, and that there were virtually no other marital assets of value. We also gather that the residence, worth something over $100,000, is encumbered by a single mortgage securing a present debt of about $50,000. Although we have not been favored with a transcript of the divorce hearing, plaintiff asserts in her post-judgment certification that the allocation of ownership of the marital premises was predicated upon a recognition of her pecuniary and nonpecuniary contributions to this long-standing marriage in the light of defendant's dissipation of a large portion of the marital assets by way of the business failure which resulted in this judgment debt.
Some 15 months after entry of the divorce decree, the intervenor filed a motion to intervene in the concluded divorce action. Relying on Interchange State Bank v. Riegel, supra, it sought the relief of modification of the judgment to declare the parties to be equal tenants in common of the marital residence, to adjudicate the creditor's right to succeed to defendant's *550 undivided half interest, and to compel a sale. The trial court denied the motion to intervene, and the creditor appealed. Pending the appeal, we remanded to the trial court for the making of findings of fact and conclusions of law. In accordance with our directive, the trial judge filed a letter opinion in which, without a specification of reasons, he concluded that the pre-divorce levy on the property had been "attempted" but not successful. He also concluded that by reason of the lapse of time between entry of the divorce judgment and the filing of the intervention motion, the creditor was "estopped" from intervening and barred therefrom by laches as well. For the reasons hereinafter set forth, we affirm the order denying intervention since we conclude, as a matter of the appellant's substantive rights, that it is not entitled to a modification of the divorce judgment but rather that its rights are limited to a 20% interest in a tenancy in common.
The nature of a tenancy by the entirety and the rights therein during coverture of a judgment creditor of one of the spouses are matters long since settled by the Supreme Court in King v. Greene, 30 N.J. 395 (1959), and Newman v. Chase, 70 N.J. 254 (1976). In sum, the interest of each of the spouses is that of an equal tenant in common during the joint lives of both with a right of survivorship. While that interest is subject to involuntary sale during coverture, the purchaser is not automatically entitled to partition but only to an accounting for half the imputed rental value of the premises less expenses. Accordingly, the value of the interest of the one debtor spouse on an involuntary sale is relatively nominal.[2]See, e.g., Lee v. Lee, 180 N.J. Super. 90 (Ch.Div. 1981).
*551 Prior to the 1971 enactment of the amendment of N.J.S.A. 2A:34-23, which introduced the concept and practice of equitable distribution into our family law, the effect of a divorce on the spousal interest in a tenancy by the entirety was also well defined. Since the existence of the tenancy by the entirety is a function of the marriage, the subsistence of the tenancy by the entirety is dependent upon the subsistence of the marriage. Hence, when the marriage terminates, so must the tenancy by the entirety. In this jurisdiction, it has long since been held that the dissolution of the marriage results in conversion of the tenancy by the entirety into an equal tenancy in common. See Buttlar v. Buttlar, 67 N.J. Eq. 729 (E. & A. 1904), aff'g o.b. Buttlar v. Buttlar, 67 N.J. Eq. 136 (Ch. 1904). And see Sbarbaro v. Sbarbaro, 88 N.J. Eq. 101, 102 (Ch. 1917), nothing that conversion to a tenancy in common rather than to a joint tenancy more nearly conformed with the statutory directive of L. 1898, c. 232, § 15, now N.J.S.A. 46:3-17, providing that no estate shall be considered an estate in joint tenancy unless expressly so set forth in the grant or devise creating it. The automatic conversion rule was thus forged with clear and certain application, and all of the consequences of a tenancy in common, including the partition and sale rights of a creditor of a single tenant, attended the conversion by divorce of a tenancy by the entirety into a tenancy in common. See, e.g., Mueller v. Mueller, 95 N.J. Super. 244 (App.Div. 1967). Thus, a creditor levying on a debtor spouse's interest in a tenancy by the entirety would, after entry of a divorce judgment, succeed to that spouse's converted interest in a tenancy in common subject to partition. Interchange State Bank, supra, applied this rule after enactment of the equitable distribution law and in defeat of an equitable distribution judgment which had awarded the non-debtor spouse sole title to premises held during coverture by the entireties.
The fundamental question before us is whether the rule of automatic conversion of a tenancy by the entirety into a tenancy in common survives the equitable distribution law. We *552 think it plain that it does not since its effect is in direct contravention of the essential purpose, policy and operation of equitable distribution. It need hardly be said that the whole point of equitable distribution is premised on the recognition of marriage as a shared undertaking in which both spouses, by virtue of their pecuniary and nonpecuniary contributions, participate in the process by which assets, irrespective of title thereto, are accumulated during the marriage and are consequently entitled to a fair share of those assets upon dissolution of the marriage. See, e.g., Rothman v. Rothman, 65 N.J. 219, 229 (1974).
The obligation of the trial judge fairly to apportion all of the assets acquired by the spouses during marriage, whether acquired jointly or individually, and the right of each of the spouses to receive such an apportionment obviously must supercede, as between the spouses, the automatic conversion rule. Indeed, this consequence was recognized early in the judicial development of equitable distribution precepts. Thus, in Painter v. Painter, 118 N.J. Super. 332 (Ch.Div. 1972), the trial judge, in distributing the marital assets, concluded that as a matter of law each spouse had to be entitled to a half interest as a tenant in common in property held by the entirety. The Supreme Court, on appeal from this and other trial court conclusions, reversed and remanded, making clear that marital assets are to be allocated regardless of ownership in accordance with an overall and comprehensive distributive scheme. Painter v. Painter, 65 N.J. 196, 213 (1974). As the equitable distribution law has since evolved, the power of the court to disregard the automatic conversion rule in distributing property held as tenants by the entirety is taken for granted as a legal proposition. See, e.g., Perkins v. Perkins, 159 N.J. Super. 243, 246 (App.Div. 1978); D'Arc v. D'Arc, 164 N.J. Super. 226 (Ch.Div. 1978), aff'd in part, rev'd in part, 175 N.J. Super. 598 (App.Div. 1980), certif. den. 85 N.J. 487 (1980), cert. den. 451 U.S. 971, 101 S.Ct. 2049, 68 L.Ed.2d 350 (1981). It has also come to be recognized that that power provides an essential mechanism for both fulfilling *553 the goals of equitable distribution and assuring the financial protection of the family.
No category of marital asset has received more judicial attention or is subject to a greater variety of distributive options than the marital residence, typically owned as a tenancy by the entirety and also, typically a primary, if not the primary, marital asset. Thus, it is clearly established that the distribution rights of the former spouses to the marital residence need not be equal if allocation of sole ownership or allocation of a major share to one of them is warranted by all the financial and personal considerations underlying the equitable distribution plan. Beyond the disparate allocation of ownership interests are those equitable distribution plans whose keystone is the according of a continued post-divorce possessory right to one of the spouses, typically the custodial parent of minor or handicapped children who is unable, because of the family's limited economic resources, to procure comparable or even adequate alternative accommodation. These arrangements, which constitute not only a mode of division of assets but also an integral part of the overall support and alimony package, take a variety of forms. Ordinarily, they are based either on a transfer of sole title to the custodial spouse subject to a deferred-payment mortgage in favor of the other spouse or the retention of title by both spouses until eventual sale subject to such ownership ratios and such sharing of expenses as the court directs. Common to all such arrangements, however, is the deferment by the spouse out of possession of the benefit of whatever interest in the property, if any, has been awarded to him and the consequent availability of that interest to secure whatever other obligations of support he is required to provide the family. See generally Barba v. Barba, 198 N.J. Super. 205 (App.Div. 1985); Schaeffer v. Schaeffer, 184 N.J. Super. 423 (App.Div. 1982); Amato v. Amato, 180 N.J. Super. 210 (App.Div. 1981); Daly v. Daly, 179 N.J. Super. 344 (App.Div. 1981); Stout v. Stout, 155 N.J. Super. 196 (App.Div. 1977); Gemignani v. Gemignani, 146 N.J. Super. 278 (App.Div. 1977).
*554 It is thus readily apparent that the availability of a broad range of alternatives in the disposition of jointly owned real property is not only an essential tool in devising a fair and reasonable equitable distribution plan, but is also a tool whose utility is dependent upon the shedding of the constraints of the rule of automatic conversion. We conclude therefore that of necessity and by the superceding will of the Legislature in enacting the equitable distribution law, an incident of an interest in a tenancy by the entirety is its susceptibility, upon divorce, to defeasance, diminution, deferment, or other modification.[3]
The effect of this proposition on the rights of a levying creditor is self-evident. It is well settled that a levying creditor or a purchaser at an execution sale acquires no greater rights in the property than those of the debtor spouse. Dvorken v. Barrett, 100 N.J. Super. 306, 309 (App.Div. 1968), aff'd 53 N.J. 20 (1968). During coverture, the levying creditor acquires the debtor's interest, namely, a tenancy in common during joint lives with a right of survivorship  an interest of minimal value. By reason of the divorce, the levying creditor succeeds to whatever the debtor spouse's adjudicated interest in the tenancy by the entirety, if any, turns out to be and subject to whatever deferment or other burden is judicially imposed on that interest. We point out that a judgment creditor who does not levy against the interest of a debtor spouse until after the entry of the divorce judgment has been held to be limited to that spouse's adjudicated residual interest in the former tenancy by the entirety. See Sisco v. New Jersey Bank, N.A., 158 N.J. Super. 111 (App.Div. 1978). We see no fundamental unfairness in so limiting rights of a judgment creditor of one of the spouses who levies before the divorce. To the contrary, we are satisfied that the protection and advancement of vested family *555 interests affordable by means of a creative, effective, and flexible equitable distribution plan is a desideratum far outweighing any claim of a levying creditor to the fortuitous enhancement, attendant upon divorce, of the minimal execution value of the debtor spouse's interest in a tenancy by the entirety.
Here, the spouses were adjudicated by the divorce judgment as tenants in common subject to an 80-20 ownership ratio. The intervenor thus succeeded to the debtor spouse's present 20 percent interest in the former tenancy by the entirety. We do not determine its right to partition and sale of that 20 percent since the issue is not before us. We do, however, note a presumptive right to so proceed since the judgment did not award the non-debtor spouse a post-divorce possessory right, since there are no minor children, and since there do not appear to be any other special equities. In any event, the creditor is free to proceed and the debtor as well as the non-debtor spouse will be equally free to raise any appropriate equitable defenses to partition or sale in lieu thereof which either or both may have.
We point out that our rejection of the apparent conclusion of Interchange State Bank, supra, that the automatic conversion rule survives equitable distribution finds support in other jurisdictions which both retain tenancies by the entirety and provide for a mode of equitable distribution and have reached the same conclusion as we on substantially similar grounds. See, e.g., Holt v. Boozel, 394 So.2d 226 (Fla. Dist. Ct. App. 1981); Liberman v. Kelso, 354 So.2d 137 (Fla. Dist. Ct. App. 1978); Richardson v. Park Avenue Bank, 173 Ga. 43, 325 S.E. 2d 455 (Ct.App. 1984). See contra, Branch Banking and Trust Co. v. Wright, 74 N.C. App. 550, 328 S.E.2d 840 (N.C. Ct. App. 1985).
Several remaining matters need to be addressed. First is the question of a levying creditor's right to intervene in the divorce action in order to assert the right to succeed to the debtor spouse's interest in the tenancy by the entirety. We are *556 satisfied that a creditor is not entitled to intervene for the sole purpose of attempting to induce the court to apply the automatic conversion rule. On the other hand, the claim of a levying creditor of one of the spouses may be an important consideration for the court to take into account in devising an equitable distribution scheme that will best serve and protect all the competing legitimate interests. We are satisfied that the levying creditor should ordinarily be accorded an opportunity to intervene and to seek an adjudication of his derivative rights and a specification of the property to which they will attach. His intervention would, moreover, serve to forestall any subsequent claim he might make respecting alleged fraudulent collusion between the spouses in amicably agreeing upon an equitable distribution scheme which might place the debtor spouse's interest in a tenancy by the entirety out of any or adequate post-divorce reach of his creditors. In these respects, the levying creditor clearly has a sufficient interest to warrant his interjection in the action. See R. 4:33-1, -2. Since, however, no such claim of fraud was here made and since this modest marital estate appears to have been fairly allocated in accordance with customary equitable distribution guidelines, we are persuaded that this creditor, even if its intervention application had been timely, was not substantially prejudiced by its denial.
Finally, we recognize that there is some question as to the perfection of the intervenor's levy even though we have addressed the issues here presented as if it were valid. Although the trial judge concluded that the levy was not "successful," he did not explain the basis of this holding. We assume, however, that it lies in the statutory requirement of N.J.S.A. 2A:17-1 that the creditor must exhaust the debtor's available personal property located in the county before resorting to his real property. See Raniere v. I & M Investments, Inc., 159 N.J. Super. 329 (Ch.Div. 1978), aff'd 172 N.J. Super. 206 (App. Div. 1980), certif. den. 84 N.J. 473 (1980). The creditor here relies on the sheriff's return which stated that no levy was *557 made on personal property because access to the residence was denied, presumably by the judgment debtor. The argument is that the denial of access justified the immediate resort to a levy on realty. We are not persuaded that this is necessarily so. Ordinarily, the process of identification of and levy upon a debtor's personal property is not achieved simply by a tour of his home and a seizure of its furnishings. Typically, the necessary determinations require at the least a deposition taken by way of supplementary proceedings pursuant to R. 4:59-1(e). Such proceedings were in fact here conducted some months after the levy and led to a wage execution against defendant. We note, however, that the discovery proceeding demonstrated the minimal nature of defendant's personal assets. Although it therefore appears that the execution was premature, it does not appear that either defendant or any other creditor was thereby prejudiced. Since the intervenor is, therefore, entitled to the remedy, we will not now vacate it.
The final matter of concern stems from the fact that because of the minimal value of a debtor spouse's interest in a tenancy by the entirety, a judgment creditor may well opt, as we understand is frequently the case, to forego execution and await a voluntary sale or other disposition in the expectation that his judgment lien will be then satisfied. Where that lien, however, is based on a judgment entered against only one of the spouses, it is clear that it cannot be satisfied out of the interest of the other spouse in the jointly owned property. We simply point out that the principles we have herein stated apply equally to an unperfected judgment lien. Hence, the non-debtor spouse who is awarded an ownership interest in the tenancy by the entirety by way of an equitable distribution judgment is entitled to take that interest free of the judgment lien and may seek a judicial decree to declare that right.
The order appealed from is affirmed.
NOTES
[1] Although John Bruno Corporation's motion to intervene was denied and hence it is not technically an intervenor, that designation of his status has nevertheless been used by the parties for convenience of reference, and we employ it for that reason as well.
[2] We limit this statement to state law. See, e.g., United States v. Rodgers, 461 U.S. 677, 103 S.Ct. 2132, 76 L.Ed.2d 236 (1983), permitting a federal lien under 26 U.S.C.A. § 7403 against one spouse to be satisfied by sale of a tenancy by the entirety subject to the right of the non-debtor spouse to her share of the proceeds. Nor do we address the treatment by the 1978 Bankruptcy Code of tenancies by the entirety owned by debtor and non-debtor spouses. See 11 U.S.C.A. §§ 363(h), 522(b)(2)(B), 541.
[3] As to the constitutionality of the broad changes in the incidents of vested ownership effected by the equitable distribution laws, see Rothman v. Rothman, supra, 65 N.J. at 225-232.