ADAM WHITE, Jr. v. JOHN M. TRUMBULL.

If on making payments, the debtor do not direct, to which of several debts they are to be applied, and the creditor do not make any appropriation of them to the liquidation of particular claims, law and equity will order the payments to be applied *pro rata* to each demand.

A debtor may direct to what particular debt his payment is to be applied, and if he waive his right, the party receiving, may select the object of its appropriation.

This was an action of assumpsit, brought against the defendant as acceptor of a draft drawn on him, by one William T. Williams, payable to the Windham County Bank, which was the real plaintiff. The facts as disclosed, were as follows:

William T. Williams, being indebted to the Windham County Bank, on a draft, drawn by him upon the defendant, by whom it was accepted, for two hundred and forty dollars, payable to the said Bank or order, dated January 13th, 1827, and also on a promissory note drawn by him, and indorsed by one J. G. W. Trumbull, the payee, to the same Bank, for six hundred dollars, dated November 1827 : paid on the 31st of March 1828, to the Bank one hundred dollars, and on the 12th of May 1828, the further sum of five hundred and seventy dollars, giving for the balance a new note indorsed by J. G. W. Trumbull payee, to the Bank, as an additional security. The Judge charged the jury, that the payments which had been made, ought to be applied *pro rata* to each demand. According to the charge, the jury gave a verdict for the plaintiff, for one hundred and seventy-seven dollars and ninety cents, with the understanding, that it should be modified if necessary, according to the opinion of the court at bar. On the return of the *postea*—

*B. Williamson,* for the defendant, argued that though these payments had been made by W. T. Williams, without any particular order for their application to the entire liquidation of either debt, that the law would apply them first to the payment of the oldest debt, which was the draft, and therefore it had been liquidated. In support of this, he cited the case of *Dawe and others* v. *Holdsworth and others, Peake's Nisi Prius,* 64 ; that it was the common custom of the Bank, to apply a payment to the oldest debt, and therefore it would be presumed, that they had made an appropriation of the one hundred dollars, and the requisite part of the five hundred and seventy dollars, to the draft ; and also that the intention of Williams to release the defendant, by paying the draft on which he was, by acceptance, security, was made manifest, by his making J. G. W. Trumbull, indorsee of the note for six hundred dollars, indorsee and security of the new note given for the balance of his debt. He also cited, 9 *Wheat.* 720 ; 1 *Wash.* 133 ; 1 *Merrivale,* 605 ; *Seyman* v. *Van Slyck,* 8 *Wend.* 404 ; 14 *East,* 249 ; *Williams and others* v. *Rawlson,* 3 *Bing.* 71.

*W. Pennington,* argued for the plaintiff, that the institution of this suit on the draft, was on the part of the plaintiff an

application of the payments, of the six hundred dollar note, which would forever bind him; that no rule existed on the subject of the application of payments, but that they were left to be applied, according to equity and justice by the court; and that these debts were recognised and put down as debts of the same standing.

The opinion of the court, was delivered by

RYERSON, J.   This was an action on a bill of exchange, for two hundred and forty dollars, drawn by one William T. Williams on the defendant, and accepted by him, dated 13th January 1827, payable in six months, and discounted for Williams at the Windham County Bank.   The plaintiff was and is the Cashier of the Bank; and the action was brought for its benefit,—White being only nominally the plaintiff.   The said Williams was fixed as indorser.   In November 1827, Williams drew a note for six hundred dollars, in favour of Joseph G. W. Trumbull, payable in sixty days at the same Bank, and there discounted for Williams.   This note was also protested in January 1828.   These securities were both treated by the Bank and Williams, as his own proper liabilities, and the other parties thereto, as *parties* who had become such for his accommodation.   In March 1828, Williams paid one hundred dollars to the Bank, which was deducted from the aggregate amount of the note and bill.   The Cashier of the Bank had before, in February, applied by letter to Williams for the adjustment of these demands, and for directions about the bill, whether to be sent for collection of the acceptor, to which it does not appear that any answer was given.   In April they were placed in the hands of the Bank's attorney for collection, accompanied with a statement, embracing both bill and note, summed up together, and the payment of one hundred dollars deducted from the sum total.   On the 12th May, the attorney presented the note and bill, and this statement, to Williams who undertook, and did in part provide for them as follows:—First, by a draft of five hundred and seventy dollars, on Joseph Trumbull, payable at sight, which was promptly paid.   Secondly, by a new note to be indorsed by J. G. W. Trumbull, and discounted at the Bank, for two hundred and

ten dollars, the amount of the balance of debt, interest, discount and expenses. In ascertaining this balance, no distinction was made between the two liabilities, or the expenses incurred thereon. At the close of this arrangement, Williams drew up and the attorney signed a paper acknowledging the receipt of the draft on Jos. Trumbull for five hundred and seventy dollars, and the note of two hundred and ten dollars, expressing, that when the draft was paid, and the note of two hundred and ten dollars, indorsed by J. G. W. Trumbull, it would be in full of the note of six hundred dollars, and the bill of two hundred and forty dollars. At the foot of this receipt, Williams made a statement as follows:

| | | |
|---|---|---|
| Note | $600 | to W. C. Bank. |
| Draft on Jos. Trumbull | 240 | |
| | 840 | |
| Paid | 100 | |
| | 740 | |
| Interest on note and order, &c. | 40 | |
| | $780 | |

It was also proved, that when the note was indorsed and delivered at the Bank, the old note and bill was to be delivered up.

This note of two hundred and ten dollars never was indorsed and returned to the Bank, or its attorney. Thus leaving that balance to be collected on the original note, or bill, or both of them rateably.

The defendant insisted that the payments which had been made, ought to be applied in the first place to satisfy the bill of two hundred and forty dollars, which was the oldest debt.

For the plaintiff it was insisted, that they had a right to appropriate to either, at their election, which election they had made in the first place by a specific application on the books of the Bank to the satisfaction of the six hundred dollar note, (which was done as appeared by the books, about two years after the above negociation.) And secondly, by bringing this action on the bill, to recover the balance.

The Judge charged the jury, that the payments which had been made, ought to be applied *pro rata,* to each demand. Under this charge, the jury found a verdict for the plaintiff, for one hundred and seventy-seven dollars and ninety cents, which it was agreed should be modified if necessary, according to the opinion of this court. If the court should be of opinion, that the payments ought to be first applied to the bill, the verdict and judgment should be entered for the defendant. But if the court should be of opinion that the payments were rightly applied to the note of six hundred dollars, a verdict and judgment to be rendered for plaintiff, for the amount of the two hundred and ten dollars, with interest after the expiration of the sixty days.

The application of payments seems to be a subject, about which it is difficult to find general principles in the books, to guide our practice. The party paying may direct to what the application is to be made. If he waives his right, the party receiving, may select the object of its appropriation. If both are silent, the law must decide. But what is the decision of the law, or of enlightened reason, seems not to be well settled. Sometimes the court seems to have gone on the principle of preferring the supposed wishes or interest of the party paying. And sometimes a similar preference has been given to the party receiving. At other times the interest of a third party has governed the decision. And the cases seem to rest more on their own particular facts, than upon any general principles. In the written argument submitted to the court, it is contended, that the older debt should be first paid, and cited *Peak. N. P.* 64; 3 *Star. E.* 1091, and *notes.* But that has not always been allowed, as may be seen by consulting the book last cited; and the cases there collected.

I would remark, that both these claims were really the debt of Williams, for money loaned to him, and which were actually due, for the payment of which, he was to provide, and to both of which indiscriminately, the payments made by him, were applied, by the Bank, with his knowledge, and without his objection. These facts, it would seem, ought to conclude both him and the Bank, and hold them to a *pro rata* application of

White *v.* Trumbull.

the money. It was supposed on the argument, that W. T. Williams meant to provide for the entire exoneration of J. M. Trumbull. But this does not appear. He meant to pay the whole debt, as one debt; as such he treated it, and such it was in fact to him, although consisting of items taken up at different times. He made no stipulation, or proposition even, to exonerate J. M. Trumbull, on a partial payment, to the amount or greater than that for which *he* was liable. And he insisted before the court and jury, (having been examined as a witness, in the cause,) that it was all paid, though that fact was found against him by the jury. It shows therefore a substantial blending of the claims, and an appropriation, at the time, of the payments, by the acts, if not by the language of both the parties, which neither alone, could afterwards change. *Taylor* v. *Sandiford*, 7 *Wheaton*, 20.

But if it were true, that there had been at the time, no appropriation by either party, how would the law appropriate it? It would seem to be an equitable rule, to let the payments operate rateably for the exoneration of all the sureties; for there is nothing in the case to show that Williams, or the Bank could have any interest in discharging either liability, in preference to the other. The equities of third persons have sometimes had their influence in settling such question; even extending to the direction of *pro rata* application of payments; (see the cases referred to in 3 *Starkie*, 1092, *note* 2.) Nor can I yield to the plaintiff's pretensions in this case. The debtor must direct the application, when the payment is made. The creditor is not held so strictly to time; but what he asks, an interval of two years, or until the bringing of the action, would be an unreasonable indulgence. I am therefore of opinion the verdict is right, and that the plaintiff should have judgment thereon.

Ford, J. concurred.

The Chief Justice gave no opinion, as he had been counsel in the cause, before his appointment.

*Judgment for plaintiff.*

Cited in *Oliver* v. *Phelps, Spencer*, 197; *Edwards* v. *Darrickson*, 4 *Dutch.* 67.