63 N.J. Super. 238 (1960)
164 A.2d 508
ANNA D. WEH, PLAINTIFF,
v.
FREDERICK WEH, JR., ALSO KNOWN AS FRED WEH, JR., TRADING AS COLES EXPRESS, INTERSTATE COMMERCE COMMISSION, AN AGENCY OF THE UNITED STATES OF AMERICA, DAVID MacDONALD, STATE OF NEW JERSEY (DIRECTOR OF THE DIVISION OF EMPLOYMENT SECURITY, DEPARTMENT OF LABOR AND INDUSTRY), UNITED STATES OF AMERICA, DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided October 5, 1960.
*241 Mr. Arthur M. Karl, attorney for plaintiff.
Mr. Chester A. Weidenburner, United States Attorney (Mr. Louis T. Gallo, Assistant United States Attorney, on the brief), attorney for intervenor.
MINTZ, J.S.C.
This is a proceeding incident to a partition action in which the United States of America (the "Government") seeks to obtain the money deposited in court representing the interest of defendant Frederick Weh, Jr. in his share of the proceeds from the sale. N.J.S. 2A:56-19 and 20. Plaintiff asserts an encumbrance on the fund and challenges the priority of the Government's claim.
On June 1, 1943 plaintiff and defendant Frederick Weh, Jr., then husband and wife, acquired title as tenants by the entirety to their home, a one-family dwelling and garage, in the Borough of Roselle, Union County, New Jersey. On June 15, 1953 they were divorced and thereby became tenants in common of the premises.
In January 1959 plaintiff instituted this partition action. The property could not be partitioned, a judgment for sale was entered, and the premises were sold for $9,500. The judgment for sale recited various judgments and liens of *242 record against defendant Frederick Weh, Jr., directed that they attach to defendant's interest in the proceeds of the sale, and that their amounts and priorities be reserved for determination by the court. There is now on deposit with the clerk of this court the sum of $4,725, representing defendant's interest in the proceeds subject to the judgments and liens.
In order to preserve the property and to protect defendant's interest therein, plaintiff paid off the mortgage, the property taxes, and the costs of repairs. On May 15, 1958 an order (judgment) was entered in the matrimonial proceeding modifying the alimony award, and requiring defendant to "pay to the plaintiff the sum of $2,495.30 at the rate of $10.00 per week as reimbursement to her for previous payments which she made for the benefit of the defendant with respect to premises 506 East Second Avenue, Roselle, New Jersey, owned by them as tenants in common since the judgment of divorce became final, which said total sum is made up of the following items: payments of one-half of principal of mortgage held by Harmonia Savings and Loan Association, $1,426.33; one-half of the repairs to property, $501.47; one-half of taxes paid on property, $567.50." Defendant has paid the sum of $1,360, leaving a balance due of $1,135.30.
It is stipulated that since May 15, 1958 the plaintiff has expended the further sum of $797.16 as follows: mortgage payments, $175.08; property taxes, $507.08; repairs, $75; and property liability insurance, $40. Plaintiff contends that one-half of the total sum, namely $398.58, as well as the balance of $1,135.30 owing on the May 15, 1958 order, making a total of $1,533.88, is chargeable to the interest of Frederick Weh, Jr. and prior in lien to the claims of the Government.
The Government applies for an order to pay it the sum of $4,725. It asserts by affidavit that it is the holder of a judgment against Frederick Weh, Jr., dated August 2, 1949, and various tax liens against him, the first being filed on August 31, 1949. Additional tax liens were filed on December *243 13, 1949, August 18, 1950, November 24, 1950, January 18, 1951, August 22, 1951, April 2, 1956 and August 16, 1956. The aggregate claims of the Government exceed the sum of $4,725.
Plaintiff contends that since she received no instructions from her former husband as to how the payments made under the order of May 15, 1958 should be applied, she has the right to apply them first to property taxes, then to maintenance and the balance toward payment on account of her mortgage. The Government contends that the plaintiff is estopped from itemizing the various expenditures recited in the order of May 15, 1958 since they were merged therein. Accordingly it is urged that the federal judgment and tax liens filed in 1949, 1950, 1951 and 1956 have priority. The Government argues that the applicable principle is: "The first in time is the first in right." United States v. City of New Britain, 347 U.S. 81, 74 S.Ct. 367, 370, 98 L.Ed. 520 (1954).

I.

THE PRIORITY OF "HARMONIA'S" MORTGAGE.
Clearly, the May 15, 1958 order merely determined the amount of advances made by plaintiff for the benefit of her husband in connection with the subject premises, directed payment thereof, and by way of protection to the plaintiff further recited that in the event of sale the sum of $2,495.30, or such portion remaining due, should be a lien on the defendant Weh's undivided one-half interest in the property.
Plaintiff was obliged to make the mortgage payments which inured to the benefit of her former husband. She is entitled to be subrogated to the mortgagee's prior lien for the amount of such payments. These aggregate $1,513.87, consisting of $1,426.33, as determined by the May 15, 1958 order, and one-half of the $175.08 ($87.54) subsequently paid to Harmonia by Mrs. Weh.
Where one of several tenants pays off a mortgage on the common estate, equity will treat the encumbrance as *244 existing so as to permit the payor to obtain contribution and subrogation, or as extinguished "as will best serve the purposes of justice and the actual and just intention of the party." Kinkead v. Ryan, 65 N.J. Eq. 726, 728 (E. & A. 1903). Obviously, the intent of the plaintiff here was to obtain contribution and subrogation. The May 15, 1958 order in the matrimonial proceeding recognizes the right of contribution.
The rights of plaintiff to priority are not controlled by the May 15, 1958 order. The doctrine of merger cannot be applied to extinguish plaintiff's right of subrogation to the mortgage security. Merger is defined in Restatement, Judgments § 45, comment (a) (1942). There it is said:
"Where a valid and final judgment for the payment of money is rendered in favor of the plaintiff, the claim is merged in the judgment. This means that the claim, whether valid or not, is extinguished and a new claim on the judgment is substituted for it."
The matrimonial action, however, was predicated on an entirely different cause of action. The order does not purport to deal with the lien of the mortgagee, or with plaintiff's right of subrogation, and does not merge such rights of the plaintiff. Even if the same cause of action were involved in this case so that the original cause of action was merged, "advantages to which the plaintiff was entitled with respect to the original cause of action may not be destroyed by the judgment. Thus, if a creditor has a lien upon property of the debtor and obtains a judgment against him, he does not thereby lose the benefit of the lien." Id. § 47, comment (d). See the discussion in Geiger v. Metz, 11 N.J. Super. 134 (Law Div. 1950).

II.

THE APPLICATION OF MR. WEH'S PAYMENTS.
The lien securing plaintiff's claims, except the mortgage lien, is subsequent in time to the competing federal liens. *245 Can the plaintiff elect to apply Mr. Weh's total payments of $1,360 first to taxes and repairs, and then the balance on account of the mortgage payments? The Government contends it would be inequitable to permit such application and that payments should be applied to the mortgage debt which has priority over its liens. It urges that since the rights of third parties are affected, the court should direct the application of the payments according to the equities of the case and not accept the creditor's application of the payments. 40 Am. Jur., Payment, §§ 129, 132.
It should be noted at the outset that the Government does not argue that the payments received by Mrs. Weh remained subject to its lien in her hands and that it has a right to those funds. Consequently it need not be decided whether Internal Revenue Code of 1954, § 6323(c), 26 U.S.C.A. § 6323(c), applies. See United States v. Bess, 357 U.S. 51, 78 S.Ct. 1054, 2 L.Ed.2d 1135 (1958); United States v. Gilbert Associates, 345 U.S. 361, 73 S.Ct. 701, 97 L.Ed. 1071 (1953); United States v. Security Trust and Savings Bank, 340 U.S. 47, 51, 71 S.Ct. 111, 95 L.Ed. 53 (1950) (concurring opinion); United States v. Stutsman County Implement, Inc., 274 F.2d 733 (8 Cir. 1960); Marteney v. United States, 245 F.2d 135 (10 Cir. 1957); United States v. Rosebush, 45 F. Supp. 664 (D.C.E.D. Wis. 1942); Textile Products v. Feldan, 54 N.J. Super. 291 (Ch. Div. 1959).
The general rules governing the appropriation of payments are settled. In State v. Sooy, 39 N.J.L. 539, 545-546 (Sup. Ct. 1877), affirmed sub. nom. Sooy v. State, 41 N.J.L. 394 (E. & A. 1879), Justice (later Chief Justice) Depue held:
"In the first instance, the right to direct to what particular debt the payment shall be applied, is with the debtor. If he gives no directions, the creditor may make the appropriation himself, and in the absence of all indications of the will or intention of the parties, the law will apply the payment according to its own notion of the intrinsic justice of the case. * * * As a general rule, this right of appropriation by the parties is unlimited and unqualified. *246 It is not taken away or impaired by the effect of the appropriation on the rights of third persons. * * * It is only when the court is called upon to make the appropriation, in the absence of an appropriation by the parties, that the equities of third persons will be allowed any influence."
Here the defendant made his payments to the Probation Office pursuant to the order of the court in the matrimonial action. "He meant to pay the whole debt, as one debt; as such he treated it, and such it was in fact to him, although consisting of items taken up at different times." White v. Trumbull, 15 N.J.L. 314, 319 (Sup. Ct. 1836). As to Mr. Weh, all the underlying claims were substantially blended in the single order of the court, and it can be said he indicated by his acts that he wished his payments to the Probation Office to be applied to the general reduction of the judgment against him. Under these circumstances the payments will be applied pro rata to the reduction of the underlying claims. Cf. White v. Trumbull, supra; Federal Land Bank of Columbia v. Bank of Lenox, 192 Ga. 543, 16 S.E.2d 9, 18-20 (Sup. Ct. 1941) (pro rata application made by the court in absence of timely application by parties).
Assuming, arguendo, that there was no appropriation by Mr. Weh (see Federal Land Bank of Columbia v. Bank of Lenox, supra), the result is the same for then the court is free to apply the payments according to the equities which call for a pro rata application. As already observed, Mrs. Weh was not free to apply the payments to her advantage. In any event, her attempted application was made after the controversy arose, and hence too late. Terhune v. Colton, 12 N.J. Eq. 312, 320 (E. & A. 1857) (semble); Benson v. Reinshagen, 75 N.J. Eq. 358 (Ch. 1909).
Accordingly, the court concludes that $777.39 of the $1,360 payment should be applied on the mortgage claim of $1,426.33, leaving a balance due thereon of $648.94. To this sum should be added $87.54, Mr. Weh's share of the mortgage payments made after May 15, 1958. Plaintiff is entitled to priority in the sum of $736.48.

*247 III.

MR. WEH'S RIGHT TO CONTRIBUTION.
The Government urges that Mrs. Weh is not entitled to contribution from Mr. Weh for her expenditures for taxes, interest, insurance and repairs, relying on Polombo v. Polombo, 48 N.J. Super. 13 (Ch. Div. 1957). But compare Baird v. Moore, 50 N.J. Super. 156, 162-163 (App. Div. 1958). In the light of the order of the Matrimonial Division to the contrary, this contention cannot prevail. In any event, the point is moot in this proceeding, since only the claim of plaintiff for mortgage payments is afforded priority to that of the Government.

IV.

MR. WEH'S RIGHT TO A SET-OFF.
The Government also urges that any right of contribution should be set off by the reasonable rental value of the property for the period of Mrs. Weh's exclusive possession, citing Baird v. Moore, supra, 50 N.J. Super., at pp. 167-168. But while the majority of courts may deem it equitable to set off the value of use and occupation, the right to such a set-off is, according to our courts, "peculiarly dependent upon the facts and equities of the particular case." The "pervading principle" "particularly applicable where there is a partition in equity, [is] that the allocation of charges and credits as between the cotenants be governed by the basic justice and fairness of the situation." Baird v. Moore, supra, 50 N.J. Super., at pp. 172-173. Here it would be inequitable to charge Mrs. Weh with the rental value of the premises in view of Mr. Weh's duty to support her and the fact that over the years he chose to satisfy that duty by permitting her to have the exclusive use of the premises.
*248 Leading to the same conclusion is the rule that the burden of proving the rental value of the property lies with the party asserting the set-off. Baird v. Moore, supra, 50 N.J. Super., at p. 172. There is no proof of rental value in the case. Hence there is no indication that it exceeds what Mrs. Weh would have been entitled to have received from her ex-husband as an allowance for rent had she not been in possession of the subject premises. Additionally, it should be noted that the matrimonial division order setting forth Mrs. Weh's right to reimbursement contains no provision for a set-off.

V.

PLAINTIFF'S APPLICATION FOR A COUNSEL FEE FROM THE GOVERNMENT'S SHARE OF THE FUND.
Plaintiff applies for the allowance of a counsel fee from the fund representing Mr. Weh's interest on the ground that she did more than merely advance her own interests, and created a fund which will benefit others. In Textile Products v. Feldan, 54 N.J. Super. 291 (Ch. Div. 1959), the court refused to allow counsel fees from a fund in court where it was entirely subject to the prior tax lien of the Government, on the theory that to permit such counsel fee would whittle away the Government's share in the fund. The rationale is equally applicable to the instant case. The claim for an allowance of a counsel fee from the share of the fund payable to the Government is denied.
Except for the amount secured by the Harmonia mortgage ($736.48), to be paid to plaintiff, the fund in court representing Mr. Weh's interest shall be paid to the Government.
An order should be presented in accordance with these conclusions.