In the Matter of Joseph HURSA, Jr., a/k/a Joseph Hursa, Debtor.

Jonathan KOHN, Trustee, of the Estate of Joseph Hursa, Jr., etc., Plaintiff,

v.

Faith HURSA; Citizens First National Bank; Internal Revenue Service, an Agency of the USA; and State of New Jersey, Defendants.

Bankruptcy No. 87–07081.
Adv. No. 88–0057.

United States Bankruptcy Court,
D. New Jersey.

May 17, 1988.

314

[black redaction bars]

Rothbard, Rothbard & Kohn by Jonathan Kohn, Newark, N.J., for plaintiff/trustee.

Michael S. Kopelman, Hackensack, N.J., for defendant, Faith Hursa.

## OPINION

WILLIAM F. TUOHEY, Bankruptcy Judge.

This adversary proceeding is before the Court based upon a complaint filed by Jonathan Kohn, Trustee of the Estate of Joseph Hursa, against Faith Hursa, wife of Joseph Hursa.[1] The complaint seeks an order from this Court for leave to sell certain property free and clear of liens pursuant to 11 U.S.C. § 363. Joseph and Faith Hursa are presently involved in divorce proceedings before the state court. Defendant filed a notice of motion seeking to have this Court abstain from hearing said matter and allowing the state courts of New Jersey to proceed with equitable distribution. A hearing was held before this Court concerning defendant's abstention motion and decision was reserved. This Court has jurisdiction over the present matter pursuant to 28 U.S.C. § 157(b)(2)(A) and 28 U.S.C. § 1334. The following constitutes this Court's findings of fact and conclusions of law.

## FINDINGS OF FACT

1. Joseph Hursa ("debtor") filed a petition under Chapter 7 of the Bankruptcy Code on November 19, 1987. Jonathan Kohn ("plaintiff") was subsequently appointed trustee of the debtor's estate.

2. Faith Hursa ("defendant"), wife of the debtor, instituted a divorce action against the debtor in the Superior Court of New Jersey, Chancery Division, Bergen County, on July 12, 1985 (Docket No. FM–02168–86). As of the date of the hearing in this matter a judgment for divorce had not been entered.

3. Joseph and Faith Hursa had acquired real property known as 867 Circle Avenue, Franklin Lakes, Bergen County, New Jersey, by deed dated November 2, 1973, and recorded November 7, 1973. Said property served as the marital home. Faith Hursa continues to reside in the marital home with the five children of her marriage to the debtor. Three of the children are unemancipated. Joseph Hursa currently resides outside the former marital residence.

4. Debtor's bankruptcy petition indicates that the marital home has a fair market value of $375,000 and is subject to the following mortgage balances:

1. Hudson City Savings Bank
   First Mortgage to Purchase Home
   (November 2, 1973)          $26,106.40
2. First Fidelity Bank
   Loan to Make Home Improvements
   (August 24, 1979)           $ 7,574.11
3. Citizens First National Bank
   Third Mortgage on Home
   (August 8, 1980)            $43,068.12

The Court notes that both Faith and Joseph Hursa signed each of the three mortgages.[2]

5. On July 6, 1987, the wife filed a Notice of Lis Pendens pursuant to N.J.S.A. § 2A:15–6, et seq., which was duly recorded in the Bergen County Register's office in Book 87, page 271. The Notice of Lis Pendens states in relevant part:

This Lis Pendens is filed in connection with the litigation entitled Hursa vs. Hursa, Docket # FM–02168–86, Superior Court of New Jersey, Chancery Division, Family Part, in which the wife has a claim against the husband's interest in the below described premises by virtue of equitable distribution and as security for support. The original Complaint for Divorce was filed on July 12, 1985.

---

1. Other parties named in the complaint but not relevant to the present proceeding are: Citizens First National Bank, First Fidelity Bank, the Internal Revenue Service of the United States of America, and the State of New Jersey.

2. The debtor's petition does not reflect a fourth mortgage (copy attached to defendant's papers) on the marital home dated May 18, 1984, in the amount of $17,803.06 signed by Faith and Joseph Hursa. While this obligation may have been paid in full, the parties do not indicate such.

6. In addition to said mortgages, debtor's petition indicates taxes owing to the following entities:

Internal Revenue Service of the United States of America     $79,129.61[3]
State of New Jersey     $82,492.58

7. On January 29, 1988, a hearing was held before the Honorable Isabel B. Stark in the Superior Court of New Jersey, Chancery Division, Bergen County. This hearing was attended by Faith and Joseph Hursa and their respective counsel. At said hearing, Judge Stark stated that the marital home would be held as security to enforce the debtor's arrearages in alimony and child support that had accumulated. By order dated February 5, 1988 (see exhibit "C" attached to defendant's papers), Judge Stark set arrearages in the amount of $16,192.38.[4]

8. On January 22, 1988, plaintiff/trustee brought this present adversarial action against the wife and other interested parties seeking to sell the marital residence free and clear of liens and the interests of the lien creditors. The defendant filed a notice of motion to have this Court abstain pursuant to 28 U.S.C. Section 1334(c)(1) and (2).

### CONCLUSIONS OF LAW

The defendant requests that this Court abstain from deciding the issue addressed in the plaintiff's complaint so that the Superior Court of New Jersey can proceed with dividing the marital assets among the husband and wife. Plaintiff asks that the Court deny the request based upon the rights possessed by the trustee to sell the marital home, free and clear of the debtor's interest pursuant to 11 U.S.C. § 363.

### I.

### BANKRUPTCY COURT LOOKS TO STATE LAW FOR THE CREATION

### AND DEFINITION OF PROPERTY RIGHTS

■ In order to determine the debtor's (and hence the trustee's) property rights, it is necessary to refer to the state laws of New Jersey. The Supreme Court in *Butner v. United States*, 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979) had occasion to note at page 55, 99 S.Ct. at page 918:

> Property rights are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding ...

Thus, this Court looks to New Jersey law to determine the debtor's interest in the marital home. The question of the property interest possessed by the trustee in bankruptcy is thus grounded in state law.

### II.

### THE BANKRUPTCY CODE IS SENSITIVE TO THE RIGHTS OF THE FAMILY AND REFLECTS A CONGRESSIONAL INTENT TO PRESERVE THE MARITAL HOME AND PROTECT THE INTERESTS OF MINOR CHILDREN

■ There are several examples enumerated in the Bankruptcy Code of Congressional intent to preserve the marital home and to protect the interests of minor children. These examples include:

The debtor's rights to receive alimony and child support payments necessary for the support of the debtor and any of the debtor's dependents are exempt from creditors in bankruptcy. Code Section 522(d)(10)(D).

The debtor is entitled to exempt $7,500 in value in real property that the debtor or a dependent of the debtor uses as a residence. In the case of a husband and wife,

---

**3.** By consent order dated March 14, 1988, the Internal Revenue Service of the United States of America was dismissed as a party to this suit without prejudice.

**4.** In reading the February 5, 1988 order by Judge Stark, it is evident that there had been prior orders issued by the Court addressing alimony, child support payments and direct support payments relating to two mortgage payments, a note secured by the marital home and utility payments.

this exemption amounts to $15,000. Bankruptcy Code Section 522(d)(1).

The debtor is not allowed to discharge his or her obligations to a spouse or minor children to pay alimony or support payments pursuant to Bankruptcy Code Section 523(a)(5).

The rights of a trustee in bankruptcy to sell property co-owned by a debtor/spouse with a non-debtor spouse are specifically restricted and require the court to make specific findings of benefit to the estate which outweigh the detriment to the co-owner pursuant to Bankruptcy Code Section 363(h).

In summary, there is a consistent philosophy that flows through the Bankruptcy Code that looks to preserve the marital home and the familial benefits of dependent children.

## III.

## THE MATRIMONIAL AND FAMILY LAW OF THE STATE OF NEW JERSEY MANIFEST AN INTEREST IN PRESERVING AND PROTECTING THE FINANCIAL INTEGRITY OF THE FAMILY UNIT

In the case of *Daly v. Daly*, 21 N.J. 599, 123 A.2d 3 (1956) the New Jersey Supreme Court was faced with a challenge to the Uniform Reciprocal Support Act. Said case gave Justice Oliphant, in writing the majority of the opinion for the court, the opportunity to note:

> It is universally recognized that the family is the basic unit of the complex society in which we live and that its stability is indispensable to the public welfare and health, morals and upbringing of children is its core and essence. A child has the right to be equipped for its future mature life, and this equipment is nothing more than education in its generic and inclusive sense, implying physical, intellectual and moral development. This has been recognized in all civilizations, with few exceptions since Crito said to Socrates, "No man should bring children into this world who is unwilling to persevere to the end in their nurture and edu-

> cation." (*Daly v. Daly*, at 604, 123 A.2d 3.)

The concept of the preservation of the family unit and that a suitable environment for the raising of children is in the interests of the state was recognized in the more recent case of *Daeschler v. Daeschler*, 214 N.J.Super. 545 at page 553, 520 A.2d 777 (App.Div.1986) where the Appellate Division had cause to note that an important goal of family law is "assuring the financial protection of the family."

The concept that it is the state that must deal with the complex problems involving the marriage relationship was recognized by United States Supreme Court Justice Douglas in the case of *Williams v. State of North Carolina*, 317 U.S. 287, 63 S.Ct. 207, 87 L.Ed. 279 (1942). Justice Douglas noted at page 298, 63 S.Ct. at page 213:

> Each state as a sovereign has a rightful and legitimate concern in the matrimonial status of persons domiciled within its boarders. The marriage relation creates problems of large social importance. Protection of offspring, property interests, and the enforcement of marital responsibilities are but a few of commanding problems in the field of domestic relations with which the state must deal.

In the case of *Rothman v. Rothman*, 65 N.J. 219, 320 A.2d 496 (1974), the state supreme court recognized at page 228, 320 A.2d 496:

> It has long been well settled and now stands unchallenged that marriage is a social relationship subject in all respects to the state's police power.

The marital residence is often the cornerstone of the financial protection of the family unit. The policy of protecting the financial interests of the family unit will, therefore, often focus upon possession of the home. This point was recognized by the *Daeschler*, supra, 214 N.J.Super. at page 553, 520 A.2d 777:

> Thus, it is clearly established that the distribution rights of the former spouses to the marital residence need not be equal if allocation of sole ownership or allocation of a major share to one of them is warranted by all the financial

and personal considerations underlying the equitable distribution plan.

To understand the parties' distribution rights under New Jersey matrimonial law, it is necessary to look at the nature of property rights in the matrimonial residence.

## IV.

### THE CONCEPT OF TENANCY BY THE ENTIRETIES REFLECTS A LONG STANDING PRINCIPLE UPHELD BY THE STATE COURTS OF NEW JERSEY TO PROTECT THE INTERESTS OF A SPOUSE IN A MATRIMONIAL RESIDENCE

In an estate by the entirety in New Jersey, a husband and wife, in effect, hold the property as tenants in common for their joint lives with a right of survivorship.[5] Upon the death of a spouse, the survivor is then the sole owner. This right of survivorship is unaffected by unilateral action. However, the rights of each spouse in the life estate are alienable. Creditors of a debtor spouse can levy upon and sell the debtor/spouse's one-half interest in the life estate for the joint lives of the spouses as well as the debtor/spouse's right of survivorship. *Newman v. Chase,* 70 N.J. 254, 359 A.2d 474 (1976). This is based upon the notion that the levy under the judgment and the ensuing sale purport to reach and include all rights, title and interest of the debtor/spouse. *Id.* Thus, a levying creditor or purchaser at an execution sale acquires no greater rights in the property than those possessed by the debtor/spouse. *Dvorken v. Barrett,* 100 N.J.Super. 306, 309, 241 A.2d 841 (App.Div.1968), *affirmed,* 53 N.J. 20, 247 A.2d 674 (1968); *Daeschler v. Daeschler,* 214 N.J.Super. 545, 554, 520 A.2d 777 (App.Div.1986); *Interchange State Bank v. Riegel,* 190 N.J.Super. 139, 143, 462 A.2d 198 (App.Div.1983). It has also been held that there may be no partition with respect to land held by spouses as tenants by the entirety. *Newman v. Chase, supra,* 70 N.J. at 260, 359 A.2d 474; *Daeschler v. Daeschler, supra,* 214 N.J.Super. at 548, 520 A.2d 777; *Dvorken v. Barrett, supra,* 100 N.J.Super. at 309, 241 A.2d 841; *Lawrence v. Lawrence,* 79 N.J.Super. 25, 32, 190 A.2d 206 (App.Div.1963); *Gery v. Gery,* 113 N.J.Eq. 59 (1933); *Wujciak v. Wujciak,* 140 N.J.Eq. 487, 55 A.2d 164 (Ch. Div.1947).

In a tenancy in common, the parties hold their individual interests with no right of survivorship. The interest is fully alienable, and thus, partition may normally occur as a matter of course. *Newman v. Chase, supra,* 70 N.J. at 261, 359 A.2d 474. This remedy is not, however, available as a matter of right. With reference to the tenancy in common for the life estate portion in a tenancy by the entirety, partition is not available when the result would be inequitable or would bring about injustice to the other co-tenant(s). This situation frequently occurs when the tenants involved are either married couples and only one spouse becomes indebted to creditors, or couples involved in divorce proceedings.

## V.

### THE EVOLVING HISTORY OF EQUITABLE DISTRIBUTION IN THE COURTS OF NEW JERSEY HAS REFLECTED A GROWING CONCERN FOR THE PRESERVATION OF THE PROPERTY RIGHTS OF A SPOUSE WHO MAY HAVE CONTRIBUTED LESS IN A PECUNIARY SENSE TO A MARRIAGE BUT HAS PROVIDED SUBSTANTIAL NON–PECUNIARY CONTRIBUTIONS TO THE MARRIAGE

The term "equitable distribution"[6] directs the matrimonial judge to apportion

---

5. For a detailed, in-depth review of tenancy by the entirety law in New Jersey, see *King v. Greene,* 30 N.J. 395, 153 A.2d 49 (1959).

6. NJSA 2A:34–23, addressing alimony, maintenance and equitable distribution, provides in relevant part:

Pending any matrimonial action brought in this State or elsewhere, or after judgment of divorce or maintenance, whether obtained in this State or elsewhere, the court may make such order as to the alimony or maintenance of the parties, and also as to the care, custody, education and maintenance of the children,

the marital assets in a manner that will be just to the parties under all of the circumstances of the particular case. *Painter v. Painter*, 65 N.J. 196, 209, 320 A.2d 484 (1974). In determining what constitutes a "just" apportioning of marital assets, it is noted that:

> [T]he whole point of equitable distribution is premised on the recognition of marriage as a shared undertaking in which both spouses, by virtue of their pecuniary and nonpecuniary contributions, participate in the process by which assets, irrespective of title thereto, are accumulated during the marriage and are consequently entitled to a fair share of those assets upon dissolution of the marriage. *See, e.g., Rothman v. Rothman*, 65 N.J. 219, 229 [320 A.2d 496] (1974).

*Daeschler*, 214 N.J.Super. at p. 552, 520 A.2d 777.

Furthermore, the court in *Rothman v. Rothman*, 65 N.J. 219, 320 A.2d 496 (1974) stated at p. 229, 320 A.2d 496 of its opinion:

> [T]he division of property upon divorce is responsive to the concept that marriage is a shared enterprise, a joint undertaking, that in many ways it is akin to a partnership. Only if it is clearly understood that far more than economic facts are involved, will the resulting distribution be equitable within the true intent and meaning of the statute. *See* generally, *Freed and Foster, Economic Effects of Divorce, 7 Family Law Quart.* 275 (1973).

When considering all of the above mentioned factors, the state judge enters into a three-step process to determine the equitable distribution of marital property rights. First, the judge must decide what specific property of each spouse is eligible for distribution. Second, the judge will determine the property's value for pur-

poses of such distribution. Finally, the judge must decide how such allocation can be most equitably made. *Rothman v. Rothman*, 65 N.J. 219, 232, 320 A.2d 496 (1974).

The three step process does not, however, conclude the Court's decision as to the manner of distribution of property. As discussed previously, New Jersey law seeks to preserve the financial protection of the family and takes into account the welfare of children. Thus, conflicts arise concerning the question over which party ultimately gains final rights in certain marital property. It is in balancing the equities and coming to a decision of what equitable distribution consists of that is the unique province of the matrimonial judge.

## VI.

## COURTS OF THE STATE OF NEW JERSEY HAVE LIMITED THE RIGHTS OF CREDITORS IN THE INTERESTS OF PRESERVING THE HOME FOR THE SPOUSE AND THE CHILDREN OF THE MARRIAGE

New Jersey's Supreme Court in *Newman v. Chase*, 70 N.J. 254, 255, 359 A.2d 474 (1976), denied partition to a purchaser at an execution sale from a trustee in bankruptcy of a husband's interest in the marital home.[7] The sale resulted with the purchaser becoming a tenant in common with the wife for the husband and wife's joint lives with the purchaser possessing the husband's right of survivorship. In its holding, the *Newman* Court stated at page 264, 359 A.2d 474:

> In the case of partition sought by a transferee of the interest of one spouse in the family home, considerations of policy persuade us that a court should be permitted to exercise its equitable discre-

---

or any of them, as the circumstances of the parties and the nature of the case shall render fit, reasonable and just, and require reasonable security for the due observance of such orders.... In all actions where a judgment of divorce or divorce from bed and board is entered the court may make such award or awards to the parties, in addition to alimony and maintenance, to effectuate an equitable distribution of the property, both real and

personal, which was legally and beneficially acquired by them or either of them during the marriage.

7. *See, Kelly v. Gwinnell*, 96 N.J. 538, 476 A.2d 1219 (1984) (where only one spouse is a debtor, the couple cannot lose their home because the creditor cannot reach the interest of the spouse who is not liable.)

tion in deciding whether or not to allow the remedy. While the original reason for the peculiar characteristics of a tenancy by the entirety was no doubt the common-law concept of the unity of husband and wife, the fact that the Legislature has preserved these characteristics indicates that they continue to serve the ends of public policy. In *Sanders v. Sanders*, 118 N.J.Super. 327, 330 [287 A.2d 464] (Ch.Div.1972), the court characterized a tenancy by the entirety as "[A] protection of the parties to a marriage as security of both spouses during coverture of marital assets that were the work product of their marital economic life and the additional security to the surviving spouse upon the termination of their union by death or other." (Citations and footnotes omitted.)

The *Newman* Court continued at page 265, 359 A.2d 474:

In effect, the special treatment of tenancies by the entirety in New Jersey serves the purposes which are achieved in many states by statutory or constitutional homestead laws.

(Citations and footnotes omitted.)

The *Newman* Court's holding is not to imply that a creditor in this situation is to be treated unfairly. The Court was quick to point out that the life interest in the marital home for the joint lives of the two spouses is a "speculative asset" and would only command a low price and would be of little consolation to a creditor seeking satisfaction of a spouse's debt. When weighing the creditor's interest and probable nominal return from the sale of the spouse's life interest against dispossessing a family of its home, equitable principles direct the Court against ordering partition. *Newman, supra,* at 266, 359 A.2d 474; *Reitmeier v. Kalinoski,* 631 F.Supp. 565 (D.N. J.1986).

The *Newman* Court devised an alternate solution to provide relief to the debtor/spouse's creditor. As a general rule, since each co-tenant in a tenancy in common has an undivided interest in a whole estate, each is entitled to occupy the entire property. However, where one co-tenant remains in possession of a one-family home which is not susceptible to joint occupancy, the result is in effect an ouster of the creditor and his right to possess the property. When ouster is present, a co-tenant in possession is required to account to the dispossessed tenant for the value of the use and occupation of the property, i.e. the imputed rental value of half of the house. This value is offset by any payments made by the co-tenant in possession towards the mortgage, taxes and maintenance of the property owing from the co-tenant out of possession who is receiving rent.

The Court also notes the case of *ESB, Inc. v. Fischer,* 185 N.J.Super. 373, 448 A.2d 1030 (Ch.Div.1982) where the Court addressed the issue of whether a forced sale of the debtor/spouse's interest as a tenant by the entirety will best preserve the respective rights and accommodate the conflicting interests of the debtor's estate and the family residing on the premises. In *ESB, Inc. v. Fischer, supra,* the plaintiff was a judgment creditor of the defendant/husband in the amount of $80,000.00. There was $22,000.00 of equity in the marital home at the time. While the wife had contemplated divorce, no affirmative steps had been taken. The Court noted at page 381, 448 A.2d 1030 of its opinion that:

For as long as the family continues in possession of its home, plaintiff's rights as to that property will be those enumerated in Newman: "Equity requires that appropriate payments made by the cotenant in possession be credited in calculating what is due the cotenant out of possession." 70 N.J. at 267–268 [359 A.2d 474]. Mrs. Fischer will therefore be responsible for paying to plaintiff one-half of the imputed rental value of the house (less applicable expenses), to be credited against the unpaid amount of the judgment plus interest.

If Mrs. Fischer outlives her husband, by virtue of her right of survivorship she will succeed to full title in the property, free of plaintiff's interest, and the writ of execution will be discharged. Conversely, if the debtor husband outlives his wife, plaintiff's writ will permit it to initiate an immediate execution sale

against defendant's then full ownership of the premises, and thus to satisfy the balance of the judgment from the entire amount of the proceeds of sale.

Divorce proceedings complicate matters in situations similar to those addressed in *Newman, supra* and *Fischer, supra.* In New Jersey, a conveyance of real property to a husband and wife automatically vests them with an estate by the entirety. Express language in the conveyance must show an intent to convey a different estate. *Sisco v. New Jersey Bank,* 151 N.J.Super. 363, 367, 376 A.2d 1287 (Law.Div.1977). A final divorce terminates the marital relationship and converts an estate by the entirety into a tenancy in common. *Id., Sbarbaro v. Sbarbaro,* 88 N.J.Eq. 101, 102 A. 256 (Ch.Div.1917). Parties who are only separated or going through divorce proceedings do not become tenants in common until a final judgment of divorce is entered. *Smith v. Smith,* 78 N.J.Super. 28, 187 A.2d 367 (Ch.Div.1963). Therefore, the tenancy by the entirety survives a judgment for separate maintenance. *Joseph Harris & Sons, Inc. v. Van Loan,* 23 N.J. 466, 129 A.2d 571 (1957); *Lawrence v. Lawrence,* 79 N.J.Super. 25, 32–33, 190 A.2d 206 (App. Div.1963); *Isserlis v. Isserlis,* 99 N.J.Super. 203, 205, 239 A.2d 32 (Ch.Div.1968).

When a state court in New Jersey contemplates the distribution of property in divorce proceedings, the date a complaint for divorce is filed will fix the termination date of a marriage for purposes of equitable distribution. *Painter v. Painter,* 65 N.J. 196, 320 A.2d 484 (1974); *Schell v. Schell,* 212 N.J.Super. 649, 515 A.2d 1283 (Ch.Div.1986). Filing for divorce freezes the parties' rights in real property at that point in time for equitable distribution. Courts have been inclined to deny rent payments as implemented in *Newman, supra,* to a spouse out of possession of a marital home (as contrasted to *Newman* where the marital couple remained in the home) where a support or maintenance agreement has been placed in effect.[8] *Isserlis v. Isserlis, supra; Weh v. Weh,* 63 N.J.Super. 238, 164 A.2d 508 (Ch.Div.1960); *see also, Reitmeier v. Kalinoski,* 631 F.Supp. 565 (D.N.J.1986).

The parties refer at length to two New Jersey State Appellate Division cases resulting in opposite decisions. The first case is *Interchange State Bank v. Riegel,* 190 N.J.Super. 139, 462 A.2d 198 (App.Div. 1983), while the second is *Daeschler v. Daeschler,* 214 N.J.Super. 545, 520 A.2d 777 (App.Div.1986). In *Riegel,* the Court held that since execution on the marital home occurred before the divorce judgment, the husband's interest which was to be transferred to the wife was subject as a matter of law to valid lien claims against the interest because *"[a]ll property distribution awards from one spouse to the other in a divorce judgment are subject to existing liens, and no valid, properly perfected prior lien may be extinguished or diminished by an award between spouses for equitable distribution."* *Riegel, supra,* 190 N.J.Super. at page 145, 462 A.2d 198 (emphasis added). The Court further noted that "[t]he ultimate interest of the debtor-spouse husband no longer faced extinction if the husband predeceased the wife ... [i]t became a determinable, undivided half interest subject to partition or execution sale to satisfy the lien of the creditor's judgment." *Id.* at page 144, 462 A.2d 198. The Court then affirmed the granting of summary judgment against the wife's complaint seeking a declaration as owner of the home free of the creditor's levy, and held that the creditor was entitled to partition or execution sale to satisfy the lien.

The *Daeschler* Court flatly disagreed with the *Riegel* decision and held that a creditor's post-divorce rights are defined and limited by the equitable distribution scheme incorporated into the judgment of

---

**8.** "Support" encompasses the providing of the necessities of life including food, shelter and clothing. *Ballard v. Ballard,* 164 N.J.Super. 560, 561, 562, 397 A.2d 383 (Law Div.1978), *citing, Ricci v. Ricci,* 96 N.J.Super. 214, 222, 232 A.2d 709 (J. & D.R. Court, 1967). Thus, it would be inequitable to order the spouse in possession to pay the rental value of the premises in light of the other spouse's duty of support and the fact that this duty is carried out by allowing exclusive possession of the marital home. *Weh v. Weh,* 63 N.J.Super. 238, 164 A.2d 508 (Ch.Div. 1960).

divorce. In other words, a creditor with a pre-divorce-judgment lien on a spouse's interest in marital property would be limited to that spouse's adjudicated interest as a tenant in common.[9] The Court determined that the issue of the case was "whether the rule of automatic conversion of a tenancy by the entirety into a tenancy in common survives the equitable distribution law." *Daeschler, supra,* 214 N.J.Super. at page 551, 520 A.2d 777. The Court held that the conversion does not survive the equitable distribution law, because its effect would be an "indirect contravention of the essential purpose, policy and operation of equitable distribution law." *Id.* at page 552, 520 A.2d 777. The Court further noted at page 553, 520 A.2d 777 of its opinion:

> Beyond the disparate allegation of ownership interest are those equitable distribution plans whose keystone is the according of a continued post-divorce possessory right to one of the spouses, typically the custodial parent of minor or handicapped children who is unable, because of the family's limited economic resources, to procure comparable or even adequate alternative accommodation. These arrangements, which constitute not only a mode of division of assets but also an integral part of the overall support and alimony package, take a variety of forms.

The *Daeschler* Court concluded at page 554–55, 520 A.2d 777:

> [W]e are satisfied that the protection and advancement of vested family interests affordable by means of a creative, effective, and flexible equitable distribution plan is a desideratum far outweighing any claim of a levying creditor to the fortuitous enhancement, attendant upon divorce of the minimal execution value of the debtor spouse's interest in a tenancy by the entirety.

> Here, the spouses were adjudicated by the divorce judgment as tenants in common subject to a 80–20 ownership ratio. The intervenor [creditor who attempted proper levy after the divorce judgment was entered] thus succeeded to the debtor spouse's present 20 percent interest in the former tenancy by the entirety.

### EFFECT OF BANKRUPTCY

The filing for bankruptcy and the question of what marital property constitutes property of the estate pursuant to 11 U.S.C. § 541[10] must now become integrated with New Jersey property and marital law. As an initial matter, the filing of a petition for relief under the Bankruptcy Code does not sever a tenancy by the entirety interest. *In re Panholzer,* 36 B.R. 647 (Bankr.D.Md.1984); *In re Hackett,* 13 B.R. 755, 757 (Bankr.E.D.Pa.1981); *In re Barsotti,* 7 B.R. 205 (Bankr.W.D.Pa.1980). Additionally, courts addressing the issue have universally held that a debtor's undivided interest in a tenancy by the entirety becomes property of the bankruptcy estate pursuant to Bankruptcy Code Section 541. *In re Ward,* 837 F.2d 124 (3rd Cir.1988); *Napotnik v. EquiBank and Park Vale Savings Association,* 679 F.2d 316 (3rd Cir. 1982); *In re Panholzer, supra; In re Levenhar,* 24 B.R. 331 (Bankr.E.D.N.Y.1982); *Matter of Loeber,* 12 B.R. 669 (Bankr.D.N. J.1981); *In re Barsotti, supra.*

One question in this case arises over what interest the debtor has in the marital home given the effect of the divorce proceedings. A second question then arises concerning a trustee's right to sell the estate's interest in the marital home pursuant to 11 U.S.C. § 363. Section 363(h) permits the sale by the trustee of both the estate's interest and the interest of any co-owners in the property in which the debtor had an undivided interest as a tenant in common, joint tenant, or tenant by the entirety if four of the following conditions are met:

---

**9.** In *Daeschler, supra,* the Court held that the creditor's rights were limited to the husband's 20% interest as a tenant in common and not to an individual half interest which the creditor was seeking.

**10.** Bankruptcy Code Section 541 provides in relevant part that the debtor's estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a).

1. Partition in kind of such property among the estate and the co-owners is impractical.

2. The sale of the estate's undivided interest in such property would realize significantly less for the estate than sale of such property free of the interests of the co-owners.

3. The benefit to the estate of a sale of such property free of the interests of co-owners outweighs any detriment ensuing from such sale to the co-owners.

4. Such property is not used in the production, transmission or distribution, for sale, of electric energy or of natural or of synthetic gas for heat, light or power. *In re Levenhar,* 24 B.R. at 332; 11 U.S.C. § 363(h).

The third prong of the test involving the weighing of benefits and detriments to the parties involved cast doubt over whether the trustee is authorized to sell the home pursuant to Bankruptcy Code Section 363(h). The harm to the family unit residing in the home has to be delicately considered. The New Jersey Supreme Court in *Newman v. Chase, supra,* considered this type of situation, 70 N.J. at page 266, 359 A.2d 474 of its opinion:

> [W]here, as in the present case, a bankrupt husband lives with his young family in a modest home, we hold that it is within the equitable discretion of the Court to deny partition to a purchaser of the husband's interest, leaving the creditor to resort to some other remedy.

Furthermore, Judge Commisa in *Matter of Loeber,* 12 B.R. 669 (Bankr.D.N.J.1981) addressed property held as tenancy by the entirety in a bankruptcy situation. In affirming the sound policy against partitioning property held as tenancy by the entirety, the Court stated that the property, when *sought to be sold* by a trustee pursuant to Bankruptcy Code § 363, was "beyond the trustee's ability to liquidate assets for distribution to creditors." *Loeber,* 12 B.R. at 675.

## VII.

RIGHTS OF SPOUSES AND DEPENDENT CHILDREN ARISING FROM THE MATRIMONIAL RELATIONSHIP ARE A MATTER OF PRIMARY CONCERN TO THE STATE COURT SYSTEM. THE BANKRUPTCY COURT SHOULD ABSTAIN FROM ENTERING THIS AREA UNLESS THE PROPERTY RIGHTS IN QUESTION SPECIFICALLY CONFLICT WITH EXPRESS PROVISIONS OF THE BANKRUPTCY CODE

■ There are two ways for a bankruptcy court to abstain from hearing certain proceedings. The two routes of abstention are set forth at 28 U.S.C. § 1334(c)(1) and (2) which provide in relevant part:

### Permissive Abstention

(c)(1) Nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

### Mandatory Abstention

(2) Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction. Any decision to abstain made under this subsection is not reviewable by appeal or otherwise. This subsection shall not be construed to limit the applicability of the stay provided for by section 362 of title 11, United States Code, as such section applies to an action affecting the property of the estate in bankruptcy.

If this Court finds that the elements of § 1334(c)(2) mandatory abstention are met, this Court must then abstain from deciding the issues raised by the wife in her complaint pending in the state court. The ele-

ments of mandatory abstention are enumerated in *Allied Mechanical & Plumbing Corp. v. Dynamic Hostels Housing Development Fund Co., Inc.*, 62 B.R. 873 (Bankr.S.D.N.Y.1986); *In re Acolyte Electric Corp. v. City of New York*, 69 B.R. 155 (Bankr.E.D.N.Y.1986).

This Court finds that the wife in the matter *sub judice* has made a timely motion for abstention and that the complaint in the superior court is grounded in state statutes and case law dealing with equitable distribution of marriage rights. While the adversary proceeding in the state court is related to the bankruptcy estate in that the debtor's property rights will be defined, the state proceeding does not arise under Title 11 so as to bar abstention. In addition, the federal courts would have no jurisdiction over this inter-spousal matrimonial case but for the bankruptcy stay, and the matrimonial proceeding is currently pending in a state court of appropriate jurisdiction. Finally, this Court finds that the state court action is one that can be timely adjudicated in the state forum.

Having so found, this Court rules that mandatory abstention pursuant to 28 U.S.C. § 1334(c)(2) applies and that the motion of the defendant wife should be granted.

Further, based upon the complex issues of New Jersey property and marital law, the Court concludes that the expertise required to decide the issues of equitable distribution are best possessed by judges sitting in the state courts of New Jersey.

## VIII.

## PARTIES HAVE RAISED THE ISSUE OF THE IMPACT OF THE WIFE'S FILING OF A LIS PENDENS. INASMUCH AS SAID FILING IMPACTS ON THE EQUITABLE DISTRIBUTION ARGUMENT IT SHOULD BE DECIDED BY THE STATE COURT

The filing initially of a notice of lis pendens serves as constructive notice of a pending action concerning specific real estate, and a purchaser or mortgagee takes the real estate subject to the outcome of the law suit. *Joist Corp. v. Treetop Associates, Inc.*, 97 N.J. 22, 31, 477 A.2d 817 (1984); *Wendy's of South Jersey, Inc. v. Blanchard Management Corp.*, 170 N.J. Super. 491, 496, 406 A.2d 1337 (Ch.Div. 1975); *Chrysler Corp. v. Fedders Corp.*, 670 F.2d 1316, 1320 (3rd Cir.1982); N.J.S.A. 2A:15–6, 15–7.[11]

█ Faith Hursa's filing and recording of the notice of lis pendens on July 6, 1987,

---

**11. N.J.S.A. 2A:15–6. Written notice of pendency of action; contents**

In every action, instituted in any court of this State having civil jurisdiction or in the United States District Court for the District of New Jersey, the object of which is to enforce a lien, other than a mechanic's lien, upon real estate or to *affect the title to real estate* or a lien or encumbrance thereon, plaintiff or his attorney shall, after the filing of the complaint, file in the office of the county clerk or register of deeds and mortgages, as the case may be, of the county in which the affected real estate is situate, a written notice of the pendency of the action, which shall set forth the title and the general object thereof, with a description of the affected real estate.

No notice of lis pendens shall be filed under this article in an action to recover a judgment for money or damages only. (Emphasis added.)

**NJSA 2A:15–7. Filed notice; effect as to persons claiming interest in real estate affected by notice**

a. In an action to enforce or declare rights in, or concerning, or for partition of real estate, wherein plaintiff's claim arises out of a written instrument, which instrument either is executed by defendant and identifies such real estate or

appears of record with respect to the title thereto, from and after the filing of a notice of lis pendens, any person claiming title to, interest in or lien upon the real estate described in the notice through any defendant in the action as to which the notice is filed shall be deemed to have acquired the same with knowledge of the pendency of the action, and shall be bound by any judgment entered therein, as though he had been made a party thereto and duly served with process therein.

b. In an action other than one specified in subsection a. of this section, if a notice of lis pendens is filed, that notice shall have the same effect as provided in subsection a., until the entry of a determination by the court pursuant to this subsection. When a notice of lis pendens is filed in such an action, the plaintiff shall, within three days after the filing of the notice of lis pendens, serve upon the defendant a copy of the notice of lis pendens and of the complaint. Any party claiming an interest in the real estate affected by the notice of lis pendens may, at any time thereafter, file with the court, in accordance with the Rules Governing the Courts of the State of New Jersey, except as otherwise provided herein, a motion for a determination as to

preceded Joseph Hursa's filing of bankruptcy on November 19, 1987. While the effect of the notice of lis pendens is constructive notice of a pending action concerning specific real estate, the New Jersey Supreme Court in *Painter v. Painter, supra*, held that the date a complaint for divorce is filed establishes the termination date of the marriage for purposes of determining the parties' marital rights for purposes of equitable distribution. When one spouse files a notice of lis pendens, the purpose is to notify innocent creditors or potential parties in interest of a pending litigation concerning the property involved. The filing of the lis pendens (or non-filing) is not a procedural tool by which an opposing spouse might attempt to use the equity of property at the expense of the other spouse. However, these circumstances often result in the introduction of a third party, namely a creditor, who, without the notice of the lis pendens, would have no notice of the pending litigation. Since there are no reported New Jersey cases addressing the effect of a notice of lis pendens in a matrimonial action, the Court will also abstain from this issue, as said issue impacts upon the equitable distribution rights of the parties involved and should be decided simultaneously with the equitable distribution question in the state courts.[12]

## CONCLUSION

The Court holds that the question concerning the parties' interests in the marital home is an issue best addressed by the state court which has the expertise to decide the matter. Bankruptcy courts are *required* to abstain from hearing a state law claim that arises during the course of a case arising under Title 11 if the claim could not be litigated in a federal court in the absence of jurisdiction conferred by Title 11 and if a proceeding has already been commenced in a state court and such proceeding can be timely adjudicated in that court. 28 U.S.C. § 1334(c)(2). As stated by the court in *Matter of Spain*, 55 B.R. 849, 855 (Bankr.N.D.Ala.1985):

> [I]n the spirit of the declaration by Congress [referring to 28 U.S.C. § 1334(c)(1) and (2) ] ... section 363 of the Code, and the rationale of *Northern Pipeline* [*Northern Pipeline Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982)], abstention is proper and just in this case and the federal bankruptcy court should not try to run rough shod over the wife's rights in her home where she is not a bankrupt and does not consent and the husband has made no transfer voluntarily or by operation of law.[13] (Footnote added.)

Allowing the state court to preside over issues concerning the parties' rights to marital property in the context of an equitable distribution matter does not interfere with the administration of the debtor's estate. The adjudication in state court will thus define what property is owned by the debtor-spouse and passes to the trustee as property of the estate.

whether there is a probability that final judgment will be entered in favor of the plaintiff sufficient to justify the filing or continuation of the notice of lis pendens. The plaintiff shall bear the burden of establishing such probability. The court shall, after hearing and within 10 days, enter a determination as to whether there is a sufficient probability that final judgment will be entered in favor of the plaintiff. If the court determines that there is a sufficient probability of final judgment in favor of the plaintiff, the notice of lis pendens shall be continued of record and shall have the same effect as provided in subsection a. If the court fails to determine, the court shall forthwith order the notice of lis pendens discharged of record.

12. Should the state court uphold the validity of the lis pendens in the context of the matrimonial proceeding, it will be up to the bankruptcy court to rule upon the effect of the lis pendens, vis-a-vis the trustee in bankruptcy in the context of a sale by the trustee pursuant to Code Section 363.

13. For additional authority holding similarly, see, *In re Baumgartner*, 57 B.R. 517 (Bankr.N.D. Ohio 1986) (enforceability of anti-nuptial agreement and its relationship to divorce proceedings is a question for the state court and bankruptcy court should abstain); *Matter of Brown*, 46 B.R. 612 (Bankr.S.D.Ohio 1985) (modification of divorce judgment because of alleged changes in debtor's economic condition is a question for the state court and the bankruptcy court should abstain).

Thus, the trustee's request for leave to sell the marital home free and clear of the defendant's interest is denied without prejudice to being renewed after the state court has fixed the property rights between the husband and wife. The defendant's motion seeking to have this Court abstain from hearing said matter and allowing the state court to proceed with equitable distribution is granted. This Court thus expressly reserves jurisdiction as to the final disposition of the husband-debtor's property rights once the state court, through the matrimonial complaint, has allocated the property of the marriage pursuant to the doctrine of equitable distribution.